Matthew M. Levy, J.
In this action, there are two plaintiffs, wife and husband. There are nine defendants, but for present purposes they can be placed and shall be considered in three groups: Marboro Books and Friend, Reiss, McGrlone Advertising, both hereinafter jointly referred to as Marboro; Springs Mills, Inc., The Springs Cotton Mills, and C. L. Miller Company, Inc., hereinafter referred to collectively as Springs; and Promenade Magazines, Inc., Cowles Magazines, Inc., The Curtis Publishing Company, and Curtis Circulation Company, all together hereinafter referred to as Magazines. (“ John Doe ”, fictitious, is also named as a defendant, the persons intended being those associated in interest with the foregoing defendants, or any of them, in the transactions complained of. For present purposes, “ John Doe ” may be and is ignored.) The amended complaint now under study contains 57 paragraphs and a number of exhibits, and sets forth 16 causes of action. The pleading alleges a count by the plaintiff wife for breach of contract, a cause for inducement of such breach, counts based jointly on violation of the right to privacy as assured by the Civil Rights Law and on violation of the c.ommon-law right of freedom from defamation, and causes grounded solely in libel. Loss-of-consortium claims are also pleaded on behalf of the plaintiff husband. And, finally, a plea for a declaratory judgment is presented by the wife. All of the canses of action are concerned with and rest upon the arrangements between the defendants Marboro (engaged in the business of conducting bookstores and selling books) and one Avedon (a high-fashion photographer, not a party to this suit) and their agreements with the female plaintiff (a model), the “ model release ” executed by her, and the claimed wrongful use by the defendants of Avedon’s art work, including the model’s photograph, in connection with the advertising of the defendants Springs (engaged in the manufacture and sale of bedsheets).
The initial complaint in this action was attacked by the defendants for insufficiency upon its face, as defensively vulnerable because of release, and for impropriety in form and content. Without passing upon the merits of the motions, my learned *169 colleague at Special Term dismissed the pleading for the reason that, in violation of section 241 of the Civil Practice Act, it did not contain a plain and concise statement of the material facts. Leave was granted the plaintiffs to replead. Motions have now been made by the respective defendants attacking the amended complaint under section 241 and also in pursuance of rules 102, 103, 106 (subd. 4) and 107 (subd. 6) of the Rules of Civil Practice, the same objections being raised as on the prior application. No doubt, there are allegations in the amended complaint that are not in the conventional or traditional form, and that is true, too, of some aspects of the methodology of the pleading (e.g., par. 5, incorporating Exhibit A, naming and describing the defendants in the action, and the “Notice to Defendants ” annexed thereto). Indeed, in some respects what is set forth clearly runs afoul of rules 102 and 103. I have, nevertheless, come to the conclusion that I should, wherever possible, dispose of the issues as a matter of substance, rather than as a matter of form. And this I shall endeavor to do, notwithstanding that thé unorthodox style in which some of the allegations of the present pleading are couched may make this procedure somewhat more than passingly difficult. The plaintiffs have on their own account moved for judgment in their favor against the defendants sued in certain causes of action, on the ground that the attack made by the defendants upon these causes' was frivolous.
The first cause of action is asserted by the plaintiff Mary Jane Russell alonó and against the defendants Marboro only. Since many of the allegations here pleaded are reiterated in later counts, I deem it necessary to give a rather complete statement of the cause as set forth in the amended complaint:
The plaintiff (a college graduate, the wife of the coplaintiff and the mother of their young sons) is a well-known professional high-fashion photographic model, portraying before the cameras of the leading fáshion photographers the intelligent, refined, well-bred, pulchritudinous, ideal young wife and young mother, in artistic settings and socially-approved situations. Her earnings are among the highest in her vocation. Her high professional standing and concomitant earning power have been achieved by meticulous' adherence to the highest standards of professional conduct and good taste for herself and for her clients. The plaintiff’s professional services and photographs have never been aváilable for purposes of advertising or trade to anyone who resorts to bad taste, immodesty, double entendre or similar techniques in his appeals for public attention. . The *170 use. of a photograph, of the plaintiff by. an advertiser .known to be ail adherent of such techniques connotes that the plaintiff had consented to such use. Such consent, if given by' the plaintiff, would ruin her professional standing and earning power and cause her to be shunned by family and friends and in the community in which she lives and works.
One Richard Avedon- is. a well-known and highly-respected fashion photographer, engaged in the profession of creating artistic photographic. illustrations for commercial advertising. The defendants Marboro are in the business of conducting a number of bookstores. In December, 1954 Aveclon and Marboro entered into an oral-contract, in which, for the sum of $500 to be paid by Marboro to Avedon, he agreed to make,- develop and deliver to Marboro a photographic illustration of - Marboro’s educational books, under a license fo Marboro to use such art work in a full-page advertisement in one issue of The New York Times and as posters in Marboro’s bookstores containing reading matter and illustrations limited to Marboro’s educational books. Marboro authorized Avedon to contract on Marboro’s behalf for the rental by him of props and the engagement by him of the professional services of the models needed for such production. Marboro agreed not to violate the license or use heretofore referred to. In implementation of that agreement, Avedon and Marboro entered into an oral contract with the plaintiff to be the female model in the illustration. It was agreed that there would be a male model in an adjoining bed and that each would be pictured reading an educational book. The plaintiff agreed to execute a written consent to Marboro which would authorize the use of her image as provided in the contract and not otherwise. Marboro agreed that the illustration would appear only in the advertisement and posters above a caption such as “For People Who Take Their Reading Seriously”. Avedon and Marboro agreed to use the film, art work and the plaintiff’s written consent solely in performance of their contract; and, since the subject matter was a so-called “ bed picture ” — with its potential of injury to the plaintiff — it was recognized that, if they were used in violation of the contract, the plaintiff might be caused injury to her reputation, person and professional standing. Thereafter, and in December, 1954, the plaintiff and Avedon duly performed, the result being a Marboro full-page book advertisement, which included the plaintiff’s picture, in The New York Times and in posters in Marboro bookstores.
In May, 1955 Marboro falsely represented to Avedon that the photograph negative was needed by Marboro for further book *171 store posters. Thereupon, Avedon delivered the film to Marboro, who, for $200, delivered the film and art work to the defendants Springs. These defendants, for many years, have been engaged in selling bedsheets, and, in aid of the disposition of their product, have utilized extensive national advertising which was offensive and in bad taste to such an extent that they have been unable to obtain for their bedsheet advertising photographic illustrations created and participated in by persons of the professional stature and talents of the plaintiff and of Avedon. In June, 1955 Springs retouched and altered the negative and the art work so as to place the plaintiff in the company of an elderly male reading a book by Springs entitled “ Clothes Make the Man ”. This book had for some years been nationally advertised to contain reading matter and illustrations so vulgar in content that publication thereof had been refused by editors. Springs used the transformed material in their bed-sheet advertisements in the publications of the defendant Magazines, with circulations in the millions of copies. The material thus published was intended- and understood to mean, among other things, that the plaintiff had posed for a bed-sheet advertisement portraying a willing call girl waiting to be used by a stranger whetting his sexual appetite. Insofar as the publications concerned the plaintiff, they were false and defamatory. As a consequence, the plaintiff was humiliated and distressed, held up to public contempt, and exposed to the hazard of loss of clients and earnings and to the respect of her family. These results were the natural sequel of Marboro’s intentional, reckless and malicious breach of contract, and caused the plaintiff damage in a substantial sum.
The second cause of action is pleaded by the same plaintiff against the defendants Springs. In substance, the first count is realleged, and then the plaintiff asserts that Springs had knowledge of the contracts referred to and that Springs were aware that neither the plaintiff nor Avedon would participate in the creation of a photographic illustration for Springs’ bedsheet advertisements nor consent to the use of the film or art work for such purpose. Nevertheless, Springs intentionally and maliciously induced Marboro to sell and deliver to Springs the plaintiff’s photograph and Avedon’s art work, and the plaintiff was damaged. thereby.
The third cause of action is pleaded by the plaintiff against the defendants Marboro, realleging the substance of the first count as to the arrangements between the plaintiff and Avedon, between Avedon and Marboro, and between Marboro and Springs, realleging the claimed libel and its results, and alleging *172 that when Marboro sold the film and art work to Springs for a consideration, Marboro did so with full knowledge of the situation as regards the plaintiff and Springs, thus knowingly-using the plaintiff’s portrait for purposes of trade without first having obtained the plaintiff’s consent, in violation of section 50 (and § 51) of the Civil Rights Law. Similarly, in the fourth cause of action, the plaintiff sues the defendants Springs, alleging use of the plaintiff’s portrait for advertising purposes in violation of the Civil Rights Law, in that the plaintiff’s consent for such use was not first obtained, and pleading the claimed libel in the publication of the advertisement. And, in the fifth, sixth and seventh causes of action, the three defendant Magazines (in whose issues the Springs advertisements were published) are sued, with violation of the Civil Rights Law and libel as the gravamen of each of the respective claims.
In the eighth cause of action the defendants Springs are alleged to have published the libelous matter complained of with knowledge of its untruthfulness and with intent to injure the plaintiff in her professional reputation. The defendant Magazines are respectively the defendants sued in the ninth, tenth and eleventh counts, in which is set forth the further allegation that these defendants knew, or by the exercise of reasonable care could have ascertained, that the publications complained of were false and defamatory.
In the twelfth, thirteenth, fourteenth and fifteenth causes of action, Edward T. Russell, the plaintiff husband, sues, with Springs and the Magazines being respectively the defendants, and with the claims being based on the allegation that the acts of these defendants in relation to the publication of his wife’s photograph and art work in the Springs bedsheet advertising unlawfully deprived the plaintiff husband of his wife’s society.
It will be noted that in none of the causes of action I have heretofore outlined, have the plaintiffs set forth the written consent to which they refer. That appears to have been reserved, insofar as the plaintiffs are concerned, to the 51st paragraph in the sixteenth and final count — which is one for a declaratory judgment — where the consent is set forth in full as an exhibit. I point this out because the defendants Springs and the Magazines move under rule 106 for dismissal of the second, and the fourth through the sixteenth causes for insufficiency on the face of the pleading, while the defendants Marboro move for dismissal of the first, third and sixteenth causes under rule 107 upon the ground of release, the document being set forth as a part of these defendants’ moving papers, and under rule 106 for insufficiency on the face of *173 the amended complaint. In the peculiar circumstances here, I think that the court should not be deterred from determining the questions presented as a matter of substance, either upon the basis that the written release inheres in each and every count, or that the causes to which the motions are addressed and whose dismissal is sought are attacked under rule 107 on the basis of the written release — -for as to the existence thereof there is no dispute whatever.
' The consent. referred to by the parties is entitled ‘ ‘ Model Release ” and reads as follows:
Date of Shot 12/17/54 Client............................
Job Number............................
MODEL RELEASE
The undersigned hereby irrevocably consents to the unrestricted use by Richard Avedon, advertisers, customers, successors and assigns, of my name, portrait or picture, for advertising purposes or purpose of trade, and I waive the right to inspect or approve such completed portraits, pictures, or advertising matter used in connection therewith.
S.S........................... signed M. J. Russell
social security
MODEL AGENCY ____ Fords
Witness........................
Fitting ............
Time in 10 Out 12 $ 80
The release is a printed form, which the plaintiff model admits she signed. The plaintiffs contend, first, that this instrument is void, because — although concededly executed by the proper signatory — it was delivered by her to Avedon in blank. What was left blank was the 41 Date of shot ’ ’, the name of Avedon’s ££ Client ” and his “ Job Number ”, the plaintiff’s social security number, the i£ Model Agency ”, ££ Fitting ”, and the attestation of the ££ Witness” to the signature. Also the ££ Time in ” and ££ Out ” and the amount of compensation were not indicated at the time of delivery of the document by the plaintiff. All else was full and complete.
Even if some of these blanks had left unspecified factors more substantive and relevant to the instant issues, that would not necessarily be fatal to the validity and efficacy of the consent. For, “ [w]here a written contract, or a writing apparently intended to be a written contract when completed, contains blank spaces, and words authorized by one party thereto are inserted by the other in the spaces, the writing as altered is operative and, “ [ijn the absence of circumstances showing a contrary intention, authority is implied to fill spaces with words that are *174 apparently appropriate” (2 Restatement, Contracts, § 442, on ‘ ‘ Effect of Authorized Filling of Blanks; Implied Authorization ”). There is no claim by the plaintiffs that what Avedon did write in, in those blanks which were filled in by him, was contrary to the fact.
Moreover, it is quite obvious to me that the blanks did not leave open any basic element in the contract between the parties. The omission of the name of the photographer’s client and of the job number is entirely immaterial; these items are merely for purposes of identification and of the photographer’s bookkeeping facilities. That the model’s social security number is not noted is inconsequential, and the absence of a notation as to “Fitting” is unimportant. Notwithstanding that space is available for such purpose, the failure to have a witness attest to the model’s signature on a document of this type is of no moment. Nor is the fact that the date of the shot was filled in after the release was delivered to Avedon of any consequence, for proof of date dehors the instrument is permissible (Kincaid v. Archibald, 73 N. Y. 189, 193). The added information at the bottom, of “Time in” and “Out” and the amount of the model’s charges, is no material part of the document, but merely a computation of the compensation, which, too, need not have been a part of the release as such in order to render it effective. In the situation in the case at bar, the model who signed the release is not a promissor, who would be entitled, under accepted legal principles, to consideration supporting his contractual obligation. Consideration is not a fundamental element here and is not needed to legalize the instant “release” or “consent”, knowledgeably executed by the model and validly procured by the photographer. But even were it otherwise, any consideration involved in or affecting the transaction can be shown dehors the instrument (Strobe v. Netherland Co., 245 App. Div. 573, 576; Thompson v. Blanchard, 3 N. Y. 335, 337).
Overruling, as I have, the objection to the effectiveness of the release upon the ground of its claimed incompleteness, I come now to the next contention of the plaintiffs — that it is not the written release which governs determination of the issues, but the oral agreements between the parties and the usage in the trade. The pleading and the plaintiffs’ affidavits speak at length of oral arrangements and of trade custom. These pertain to the individual agreements made between the model, the photographer and the client, and the alleged practice prevailing among high-fashion photographers and advertisers, as.to what the photographer-artist and his client may do with the art work, the negative and the photograph, and in what manner it may *175 be done. It is contended by the plaintiffs that the oral agreements and trade nsage erected a restriction, and that the contracts among the parties, viewed in the light of this usage, incorporated orally in their arrangements, have been violated, to the great detriment of the model and of the trade.
I am not persuaded that the argument of the plaintiffs is sound. I shall assume, in respect of a release that does not give the right to assign, that rights acquired by virtue of and under the release may not be assigned. But, quite obviously, that does not resolve the present issue. For, the “model release ” involved in the case at bar allows to “ Avedon, advertisers, customers, successors and assigns ” “ the unrestricted use of ” the model’s “ name, portrait or picture, for advertising purposes or purpose of trade.” I can understand, also, that the model may reserve the right of approval of the photograph and of the resulting art work. But that, too, is not this case. For, here, the model has “ waive [d] the right to inspect or approve such completed portraits, pictures, or advertising matter used in connection therewith. ” It is thus to be noted at once that the language of the writing before me is quite simple and entirely unambiguous. In my view, therefore, nothing is needed to clarify the document and nothing should be permitted by way of extraneous evidence to negate it.
Notwithstanding the seemingly contrary view as a matter of legal principle, expressed in academic circles (see, e.g., 3 Williston, Contracts [Bev. ed.], §§ 650-652; 9 Wigmore, Evidence [3rd ed.], § 2463; Wormser, 33 Tale L. J. 172-176), I am of the opinion that it is the accepted rule in this State that trade usage~wlixch goes to~contradict the plain, unequivocSTTanguage of a complete written Hocumeniris~~iriadmi.ssible '(Mutual Safety Ins. Co. v. Hone, 2 N. Y. 235, 241; Collender v. Dinsmore, 55 N. Y. 200, 208-209; Hopper v. Sage, 112 N. Y. 530, 535; Atkinson v. Truesdell, 127 N. Y. 230, 234; Matter of Western Union Tel. Co. [American Communications Assn.], 299 N. Y. 177, 184; cf. B. M. Heede, Inc., v. Roberts, 303 N. Y. 385, 389-390, rearg. denied 303 N. Y. 909).
Nor, ás I see it, should any claimed conversatioxis between the parties fare better, in respect of their effect upon the meaning of the written words used. The written release executed by the model is the contract between the parties, and the oral arrangements, if any, between model and photographer were merged in the release. That instrument being clear and unambiguous, ixo parol proof can be received which would alter its plain meaning , (Kirchner v. New Home Sewing Mach. Co., 135 N. Y. 182, 188). The release being integrated and complete on its face, *176 parol evidence cannot be introduced'.to show other parts'of The bargain, if any, relating to the matters so plainly covered.'by the document (1 Restatement, Contracts, § 237). Nor would the fact that an oral representation was made, which,..let us assume, may have induced the signing of. the release that expressly negatives the representation, permit the introduction of parol evidence (People ex rel. McGoldrick v. Regency Park, 280 App. Div. 804, affd. 305 N. Y. 650). This is not a case where delivery of the consent was under circumstances of fraud pleaded by the plaintiffs in a suit to rescind or reform the consent as in fact written and signed (Kirchner v. New Home Sewing Mach. Co., 135 N. Y. 182, 189, supra). And the claim of the plaintiff here, as was the case in respect of the claim of the plaintiff in Gilbert v. Rothschild (280 N. Y. 66, 71),does not lie in the fact that there was fraud in the execution of the instrument itself, that [she] was induced to sign an instrument different than [she] understood it to be * * *. In such' a case the fraud would lie in the factum, the instrument would be void [citing cases] and rescission unnecessary [citing.cases].” And, too, absent delivery of the release upon a condition precedent, the release is to be given effect in accordance with its. terms (Stiebel v. Grosberg, 202 N. Y. 266, rearg. denied 203 N. Y. 547). Since the oral arrangements relied upon by the plaintiffs, would completely change the sense of this writing, these arrangements may not be received in evidence to vary the writing (B. H. Krueger, Inc., v. Hearn Dept. Stores, 265 App. Div. 791, motion for leave to appeal denied 266 App. Div. 775). lam of the view, in line with what Mr. Justice Holmes said, that, as a matter of policy, it “ would open too great risks if [parol] evidence were admissible to show that when [the parties in writing] said five hundred feet they [orally] agreed it should mean one hundred inches, or that Bunker Hill Monument should signify,, the Old South Church.” (Goode v. Riley, 153 Mass. 585, 586; 12 Harv. L. Rev. 417, 420.)
With the foregoing precepts as our present signposts, it is clear that, in considering the claims set forth in the several causes of action, the release must be considered a bar to the maintenance of any claim arising out of the alleged oral arrangements made prior to or at the time of the execution and delivery of the release, and embraced within the terms of the release, and, further, that any such claim must be considered solely in the light of the language of the release and without regard to any matter whatsoever, such as alleged usage or custom, tendered outside of the release, to affect the rights and the relations of the parties.
*177 Xt will be recalled that, in the first cause of action, the model ■sues the defendants Marboro for breach of contract, in that Marboro, in alleged violation of the claimed agreement between the parties, delivered Avedon’s artwork, including the plaintiff’s portrait, to Springs. I hold that the pleading does not, in view of the written consent, set forth a sufficient cause of action. The release bars any action in contract based upon the sale or assignment of the film. As I have said hereinbefore, the pleaded oral agreements and trade usage cannot vary the effect of the broad, clear, unambiguous language of the signed, written document. By its express terms, sale or assignment of the plaintiff’s photograph is quite clearly foreseen, anticipated and consented to (Grossman v. Frederick Bros. Artists Corp., 34 N. Y. S. 2d 785). Although the plaintiff, the photographer and the industry in which' they are engaged may prefer not to permit the sale to other advertisers of photographic work done for a particular client, the parties here have embodied their understanding in a document which freely permits such sales. "What the plaintiff has pleaded goes far beyond her written consent and is ineffective to narrow its extent.
The plaintiff further urges that the release itself, as worded, is a nonassignable license to Marboro only. I disagree. The plaintiff would construe the release out of existence. It seems to me that, since this was the form of release that was executed, the parties concerned had some reason for requesting and signing it. And if this is true, it should be treated as having some meaning and effect. In plain language, the plaintiff consented “ to the unrestricted use ” of the picture by “ Avedon [photographer], advertisers [Marboro], successors and assigns [Springs] ” (italics and bracketed words supplied). If all that the parties meant therein to agree to was that the picture could be used only by Marboro, then no such signed document was necessary.
The plaintiffs’ attempt to construe the release as a nonassignable license to Marboro is not supported by an accurate reading of the principal cases on which they rely. Adrian v. Unterman (281 App. Div. 81, affd. 306 N. Y. 771) concerned a transaction whereby the contracting parties agreed that one of them, Overhamm, would manufacture and sell perfume bearing plaintiff’s name, for which plaintiff would receive a royalty. One of the contracts involved provided that it should be binding upon and inure to the benefit of assigns of the parties; but it was also provided that nothing therein contained should ‘ ‘£ give to Overhamm any interest in the [plaintiff’s] name ££ Adrian,” except in connection with the manufacture, sale and distribution *178 by said Overhamm of perfumes ’ ” (281 App. Div. 85, italics in original). The writing in the case at bar contains no such limiting expression of intent. Since, of course, “ ‘ the intention of the parties is to be gathered not from one clause, but from the entire instrument ’ ” (281 App. Div. 85), the court held in the Adrian case that there was no intent by plaintiff, in the light of all the facts and the personal nature of the agreement, to vest Overhamm with the unrestricted right to sell the use of the name of “ Adrian ” in marketing perfumery to anyone that Overhamm might select, and when, subsequently, Overhamm made an assignment of his assets for the benefit of his creditors, the use of the name of Adrian was held not to be a property right in Overhamm coming within the terms of the assignment and the subject of sale by the assignee to defendant. Nor is the present a'case of a personal contract for personal services in the future, like that in Paige v. Faure (229 N. Y. 114); and Nassau Hotel Co. v. Barnett & Barse Corp. (162 App. Div. 381, affd. 212 N. Y. 568) is also inapplicable. What was involved there was a percentage leasing transaction, and the court held that, where the rent paid to the landlord would depend upon the skill, energy and business acumen of the particular tenant to whom he let the premises on a percentage rental, an inherently personal situation arises between the immediate parties to the lease which cannot be defeated by assignment of the lease to one with whom the landlord did not bargain. Neither the document before me nor the fashion photography industry appears to involve such inherently personal aspects and relationships.
I conclude that the plaintiff’s first cause of action should he dismissed, and without leave to replead. Notwithstanding its pleas, the industry need not be alarmed that this decision will do it irrevocable harm or play havoc with its internal affairs. It is quite a simple matter to protect the model, the photographer-artist, the advertising agency, the advertiser, and any others engaged in this trade. Those “ who wish to do business in accordance with the trade usage alleged must [merely] expressly incorporate this desire into their contracts ” (70 Harv. L. Rev. 553, 555, commenting upon Avedon v. Exstein, 141 F. Supp. 278, which suit also arose out of the transaction involved in the instant action). Those who desire to do so may, and if they take care can, execute or accept effective releases consenting to use only by the immediate prospective client. That is made plain enough by the various sample restrictive releases submitted to me on the present motions.
We come now to a consideration of the second cause of action, where Springs are the defendants sued. In this count, the *179 plaintiff model realleges substantially all of the first count, and adds that Springs, with knowledge of the oral contracts there set forth (whereby use of the plaintiff’s picture and Avedon’s artwork would be limited to Marboro), nevertheless, wrongfully, intentionally, corruptly and maliciously induced Marboro to breach their obligation in that respect by having Marboro transfer the negative to Springs. Instead of ruling upon the technical defects in pleading pointed out by Springs’ corrective motions, I shall (as I did in analyzing the first cause of action) also incorporate the written model release, elsewhere pleaded by the plaintiff, as a part of this count, and pass upon the sufficiency of the cause.
“ [I]ntentional interference without justification with contractual rights, with knowledge thereof ’ ’, gives rise, of course, to a cause of action (Hornstein v. Podwitz, 254 N. Y. 443, 448). However, the “ doctrine that a party may recover for interference with a contractual relationship pre-supposes that at the time of such interference there existed some contractual obligation or promise for the benefit of the complaining party.” (Rabin, J., in Lance Television Laboratories v. Certified Appliance Co., 99 N. Y. S. 2d 485, 487; see, also, Associated Flour Haulers & Warehousemen v. Hoffman, 282 N. Y. 173, 180-181.) Further, it is essential that the defendant’s acts upon which such a claim is grounded must have caused a legal breach of that agreement (Israel v. Wood Dolson Co., 1 N Y 2d 116, 120).
All of the basic matters pertaining to the pleaded inducement in the case at bar are part of the stated acts underlying the claimed contract and alleged breach. Since I have held that these acts are incapable of rising to the quality of a contractual obligation or of being deemed a breach, there can be no valid charge of inducement. In short, if Marboro is not under contract not to sell, then there is no breach occasioned by virtue of the sale and Springs cannot be held to have induced a breach of contract by making the purchase. As a consequence, the second count, too, does not state a cause of action, and is dismissed for insufficiency, without leave to replead.
The third count is a suit by the model against Marboro, the fourth against Springs, and the fifth, sixth and seventh are against the several Magazines. In each of these causes the plaintiff: seeks damages for alleged libel and for claimed violation of the Civil Bights Law, in that Marboro sold, Springs bought, and Springs and the Magazines published her picture in defamatory style and with defamatory material to advertise Springs’ products without her consent. I think it will aid in an understanding of the third cause of action were I to proceed *180 at this time with an analysis of several other counts, although they are pleaded later on in the amended complaint.
The sections of the Civil Eights Law applicable to the present controversy are numbered 50 and 51. Section 50 provides for criminal penalties, section 51 for an injunction and for damages. The relevant portion of section 51 reads as follows: 11 Any person whose name, portrait or picture is used within this state for advertising purposes or for the purposes of trade without the written consent first obtained [of such person may] * * * sue and recover damages for any injuries sustained by reason of such use and if the defendant shall have knowingly used such person’s name, portrait or picture [without such consent], the jury, in its discretion, may award exemplary damages.”
The basic issue raised by the £ ‘ Fourth ’ ’ through the ‘ £ Seventh ” and by the “Eighth ” through the “ Eleventh ” causes of action is entirely different from what has been considered heretofore. In these counts, the defendants (Springs in causes ‘1 Fourth ’ ’ and ‘£ Eighth ’ ’ and the respective Magazines in the other counts) are alleged to have used and published not the plaintiff’s portrait as taken and as allegedly permitted by h.er in the signed “ model release ” to be used for advertising purposes, but an altered photograph in connection with retouched artwork, allegedly unauthorized by her, and with .advertising matter claimed to be defamatory. It is, at this point, required to be emphasized that the causes numbered '“ Fourth ” through “ Seventh ” contain allegations of common-law libel, but are also grounded in the statutory prohibition against the invasion of privacy for advertising purposes without •the required consent. (Cf. Callas v. Whisper, Inc., 198 Misc. 829, 831, affd. 278 App. Div. 974, affd. 303 N. Y. 759.) The causes numbered “ Eighth ” through “ Eleventh ”, on the other hand, seem fundamentally to be based upon libel only. Two ■questions that arise here, therefore, must first be considered as to the propriety of the pleading as distinguished from its sufficiency. The first is whether it is proper pleading to allege claims of violation of the right of privacy and of freedom from defamation interwoven in one cause of action. And the second is whether it is proper pleading to set forth, in addition, a separate and independent claim of defamation in another count.
Whatever may be taken to be my views as to the applicability of the separability clause of rule 90 of the Eules of Civil Practice in respect of the formal requirements of a complaint in other types of action invoking other remedies (see, e.g., Schisgall v. Fairchild Publications, 207 Misc. 224, 227-229; *181 Manufacturers Cas. Ins. Co. v. Lafayette Nat. Bank, 6 Misc 2d 1017, 1018; Hanson v. Hanson, 203 Misc. 396, 398; Grobman v. Freiman, 3 Misc 2d 656, 660; Maas v. Maas, 5 Misc 2d 840), I am of the opinion that, in a case of this kind, where, in substance, only one act is complained of as against each of these defendants — that is, the publication of the bed-sheet advertisement containing the plaintiff’s photograph — it is unnecessary to allege as a separate cause of action each of the two grounds upon which the plaintiff claims she has been damaged by the publication (General Acc. Fire & Life Assur. Corp. v. Rupp, 278 App. Div. 666). Indeed, a case somewhat similar in this respect to the instant one came on before Mr. Justice Walter in Metzger v. Dell Pub. Co. (207 Misc. 182). As my learned former colleague put it (pp. 186-187):
“ The single act charged in the complaint as the wrong done to plaintiffs is the publication of their pictures in connection with this article. It is that single act which constitutes plaintiffs ’ one and only cause of action, and it constitutes one single cause of action whether the act was wrongful because it was a violation of section 51 of the Civil Rights Law or because it was a violation of plaintiffs’ common-law right not to be defamed, or both.
‘ ‘ Different legal theories or different grounds of liability do not make different causes of action [citing eases]; and it was incumbent upon plaintiffs to assert in- this one action all possible grounds of liability. They could not in one action recover solely the damage which ensued from an unauthorized use of their photograph and then maintain a second action to recover the damage resulting from the implied assertion that they were gangsters. All damage resulting from the publication of their photograph in connection with the article in question must be recovered in this action, regardless of the legal theory upon which the right of recovery is rested or the particular law which defendant violated in publishing plaintiffs’ photograph in connection with this article. ”
Concurring, as I do, with Justice Walter in his Metzger decision, I hold that it is proper, in the ease at bar, for the plaintiff to have set forth her claim for defamatory publication as a part of, and commingled with, her claim of unauthorized use; and I hold further that it is supererogatory and improper for the plaintiff also to have pleaded the naked libel counts. Accordingly, causes numbered “Eighth” through “Eleventh” are dismissed, without leave to replead.
The issue remains whether there has not been consent — by virtue of the signed “model release” — to the publication *182 alleged in counts numbered ££ Fourth ’ ’ through £ £ Seventh ’ The problem, as I see it, is one of construction. Without question, the consent would clearly entitle an assignee to use the same picture that was used by the original advertiser. The waiver of the right to inspect or to approve means, at the least, that the plaintiff could not object to publication by the assignee of an unflattering portrait of the plaintiff, if that were the one taken by Avedon. But if the picture were altered sufficiently in situation, emphasis, background or context, I should think that it would no longer be the same portrait, but a different one. And as to that changed picture, I would hold that the original written consent would not apply and that liability would accrue where the content of the picture has been so changed that it is substantially unlike the original. In this aspect of the case, I speak of content of the picture as used, not the purpose or extent of its use. If, for instance, Springs had used the original picture for its advertising of bedsheets, without the attendant objectionable writing or references, the fact that the purpose of the advertisement was not to interest readers in books would not negate the effect of the release.
No doubt, the plaintiff, as a professional model, has what the late United States Circuit Judge Jerome N. Frank so aptly called a valuable ££ right of publicity ” (Haelan Laboratories v. Topps Chewing Gum, 202 F. 2d 866, 868, cert. denied 346 U. S. 816). But the plaintiff did not give Marboro an exclusive grant to publish her photograph. On the contrary, the document signed by her provides for irrevocable and unrestricted assignment. Nor would the fact, without more, that the Springs’ advertisements were more widespread than the plaintiff intended Marboro’s to be, cause Springs to become liable. Otherwise, notwithstanding the seeming protection of an unlimited consent, advertisers might find themselves in the position of having incurred liability if they were too extensive or successful in their public appeal.
I hold, in short, that although the plaintiff consented in writing to the use of her portrait for advertising purposes by others and agreed that she would forgo inspection and approval of the completed material when ready for publication, it does not follow that the consent signed by the plaintiff goes beyond its wording so as to exculpate, as a matter of law, the dissemination of all types of altered pictures or of libelous material.
In Carlson v. Hillman Periodicals (3 A D 2d 987, revg. 157 N. Y. S. 2d 88) plaintiff, a model, sued for libel. Her picture had been retouched by defendant so that she appeared with her hair completely removed. The words ££ All Bald Up on Hair *183 Do’s? ” appeared underneath. Defendant pleaded a consent which permitted the use of plaintiff’s picture in whole or in part or- composite or distorted in character or form and ‘ ‘ for any other lawful purpose whatever ’ ’, and without the right of inspection or approval. Special Term granted a motion to strike the defense as insufficient as a matter of law. Defendant appealed. The Appellate Division reversed. The court said (3 A D 2d 987-988): “ Exactly what that [the language of the consent] means or what the defendant may do pursuant to such consent cannot be determined from the document itself. It may very well be that the parties intended by that document that the • defendant might do exactly what is complained of by the plaintiff. In any event the document itself does not preclude such an interpretation. It is ambiguous and being so, testimony may be received in aid of its construction. Without the aid of such testimony, we may not say that the document does not constitute a defense.” Quite plainly, a holding that the defense is not insufficient as a matter of law is not a holding that, in the light, of that defense, the complaint is insufficient as a matter of law.
.Among the acts charged against Springs, as alleged in the amended complaint in the case at bar, were altering the photographs, giving a title (“ Clothes Make the Man ”) to the book the • male ■ model was portrayed as reading, and using the art work to advertise a contest sponsored by Springs to caption the picture.. Springs used the layout with the following material printed below it: “ We bought this picture to advertise spring-maid Sheets,-but we can’t write the caption. Elliott Springs tried, but all he came up with was Lost Weekend, Knight Errant, Lost Between the Covers and You Can’t Go Wrong With On a Spring Maid Sheet. ’ ’ (Springs ’ emphasis.)
The bottom of the Springs’ advertisement contained a refererence to a book by one Elliott White Springs entitled ‘ ‘ Clothes Make the Man ”, for sale by -Springs at 50‡ each for those who needed ideas to formulate an acceptable caption for the prizewinning suggestion. The advertising layout states that “ [t]he 1955 edition [of the Springs volume] is profusely illuminated with rejected advertisements and censored copy.” The innuendo pleads, in quotes, rather racy, sexy, earthy and objectionable words and phrases which, stemming from this book, may constitute actionable libel, upon due connection with the plaintiff. Treating the complaint most favorably in its support — as I must (Mesiano v. Mazzeo, 12 Misc 2d 858, 859, and cases cited therein) —I have come to the conclusion that the untrue representation in connection with the actual photograph and *184 its publication may tend to injure the plaintiff’s reputation as an individual and in the trade, and that thus the essentials for libel are met (Ben-Oliel v. Press Pub. Co., 251 N. Y. 250, 255-256; Myers v. Afro-American Pub. Co., 168 Misc. 429, affd. 255 App. Div. 838; Carroll v. Paramount Pictures, 3 F. R. D. 95, 96-97). Indeed, in certain circumstances, the jury might find libel and award punitive damages without finding actual damage (Toomey v. Farley, 2 N Y 2d 71, 83).
As a general rule, advance consent to commit a tort upon oneself is strictly confined to those acts which are substantially the same as the acts consented to (1 Restatement, Torts, § 54). This view has been adopted in the violation-of-the-right-of-privacy cases, which are, basically, statutory torts. Thus, in Manger v. Kree Inst. of Electrolysis (233 F. 2d 5), defendant was a corporation engaged in teaching electrolysis and in the sale of equipment for the removal of superfluous hair from the human body. Plaintiff was a well-known electrologist, practising for over 20 years and an authority in the field. Defendant conducted a contest in which a prize was to be awarded to the writer of the best letter on ‘ ‘ Why I am Glad I Chose Electrolysis as a Career.” Plaintiff won first prize with her letter and gave defendant her written consent to publish the letter and her photograph in defendant’s magazine. • The letter was altered by defendant for publication so that plaintiff was held out to be one of defendant’s operators using and indorsing defendant’s machines. The court held that the change in the plaintiff’s letter might be so substantial as to vitiate her consent, and that whether it did or not was a question for the jury to determine. In Sinclair v. Postal Tel. & Cable Co. (72 N. Y. S. 2d 841) plaintiff, an actor, charged defendant with using his picture for advertising purposes without his consent. The facts showed that plaintiff’s true picture was taken while filming a motion picture. It appeared that defendant obtained permission to use plaintiff’s picture and changed it so as to show plaintiff in the act of notifying his enthusiastic admirers by telegram where the picture was being shown. Plaintiff complained that the picture presented him in an undignified light. Defendant claimed that there was a contract between plaintiff and his employer permitting plaintiff’s picture to be used for advertising purposes. Of this defense, the court at Special Term said: ‘ ‘ Assuming such authority was granted as contended, there is no proof that plaintiff authorized any picture except a true one. A ‘ composite ’ picture, brought about by double printing or new matter added to a true photograph creates a new picture different *185 from the one for which the subject posed.” (72 N. Y. S. 2d 842, supra; see, also, Rosenfeld v. Curtis Pub. Co., 163 F. 2d 660, 662 [2d Cir.]; cf. Grossman v. Frederick Bros. Artists Corp., 34 N. Y. S. 2d 785, supra; Dahl v. Columbia Pictures Corp., 12 Misc 2d 574).
The defendants Springs contend that, when the plaintiff posed for the photograph, she was acting in her professional character as a model, and hence that the publication of the picture in any fashion cannot libel her individually as the world at large knows that she was but ‘ ‘ playing a part. ’ ’ The defendants cite examples of a number of actors and actresses who have portrayed roles of degradation and then conclude the argument with the contention that the general public would never associate these Thespians as individuals with the characters they depicted. The weakness in the defendants’ submission lies in the fact that those persons consented to the portrayal of those roles, whereas here the plaintiff disavows such consent. And, certainly, even a public figure such as an actress or a model cannot with impunity be placed in a position of public obloquy without her consent. Indeed, her interest in reputatioii may at times be more pressing than that of the private citizen, especially where she has a monetary interest in her physical form, presence and dignity. I hold, therefore, that the fact that the plaintiff is a model does not, as Springs contend, mean that, as a matter of law, an unconsented-to publication of a distorted photograph of her can never be libelous. Moreover, her interest in reputation ■ — -the essence of libel — may be at stake both as an individual personality and as an artist’s model. Her interest in maintaining both facets of her reputation is undeniable — in her professional life and in her home community (Martin v. Johnson Pub. Co., 157 N. Y. S. 2d 409, 411-412).
While the portrait of the plaintiff might, under the unrestricted form of consent signed by her, be used by Springs for advertising and for trade, I hold that it is implied in law, under this form of consent, that such use shall not reach libel. "Whether or not the plaintiff’s writing consented in advance to a libel against her .is, at the least, a question of fact, and is not to be resolved against the plaintiff as a matter of law. The claim for invasion of the right of privacy coupled with the allegation of defamation states a good cause of action. The questions of the degree of change from the original picture and whether the consent applies to the picture as altered are for the jury, and, if the jury find that the change was substantial, and not consented to, the plaintiff may recover.
*186 Accordingly, the motion of the defendants Springs to dismiss the fourth cause of action for insufficiency is denied.
We now return to a consideration of the third cause of action. It will be recalled that here the plaintiff sues the defendants Marboro only. The plaintiff alleges that Marboro breached the contract by selling the film and artwork to Springs, that Marboro had knowledge of the plaintiff’s personal and professional standing and of the objectionable nature of Springs advertisements and that Marboro made the sale in order to enable Springs to retouch the photograph and artwork and to publish the altered picture with reading matter that libeled the plaintiff. The plaintiff argues in her brief that Marboro’s breach of contract in making the sale to Springs is the basis of Marboro’s liability here. It will be remembered, however, that I have held that there is no contract and no breach, and therefore, of course, the ground urged to sustain the count fails to do so. And, whether or not the bare sale by Marboro, without more, is to be deemed a “ use ” for “ purposes of trade ” within the meaning of the statute need not here be determined. For the written document of consent signed by the model in the case at bar serves at one and the same time to exclude proof of any contradictory oral arrangements or trade usage, as a defense to any claim of violation of contract, and as the required statutory permission to Marboro to use the plaintiff’s picture for purposes of trade (Merendi v. General Cigar Co., N. Y. L. J., March 12,1940, p. 1135, col. 6 [Sup. Ct., New York County, Spec. Term, Part III, Hoestadteb, J.], affd. 259 App. Div. 1008, motion for leave to appeal denied 284 N. Y. 821; cf. Rhodes v. Sperry & Hutchinson Co., 193 N. Y. 223, affd. 220 U. S. 502).
In the light of some of the allegations contained in this cause of action, I shall consider the cause to be grounded not upon contract but upon the theory that the defendants Marboro were contributing tort-feasors to the wrong allegedly done the plaintiff by the defendants Springs. (See Prouty v. Drake, 208 Misc. 540, 543.) The allegations to which I refer are that Marboro, with knowledge of the facts, sold the material to Springs in order that Springs would distort it and publish a libel concerning the plaintiff in connection with it. There is thus brought back into play as against the defendants Marboro, the claimed violation of the plaintiff’s common-law right not to be libeled and of her statutory right of privacy. Whether the plaintiff can prove these allegations is another matter. It is axiomatic that I am to take the allegations at face value, and that I am to examine them tenderly in aid of a holding of the count’s sufficiency {Harrison v. Winchell, 207 Misc, 275, 278), *187 On this basis, I am inclined to hold that the plaintiff has the germ of a valid cause of action here, although I have not been furnished, and I have been unable to find, any precedent in point — one way or the other.
In Federal Trade Comm. v. Winsted Hosiery Co. (258 U. S. 483) a manufacturer accused of mislabeling fabrics argued that he sold goods only to retailers who were fully aware of the true content of his products. The court held that the manufacturer, knowing what use would ultimately be made by the retailer of the mislabeled goods, could not escape responsibility for their distribution. Mr. Justice Brandéis said at page 494: “ That a person is a wrongdoer who so furnishes another with the means of consummating a fraud has long been a part of the law of unfair competition.” In the case at bar, Marboro furnished Springs the picture, allegedly with the knowledge that it would be used by Springs in altered fashion and to defame the plaintiff, and in order that it would be so used. Thus, here, too, the supplier knew what would occur and supplied the goods which were to be used to bring about the wrong.
Let me quote now from the meaningful principle expressed in the Restatement of the Law, promulgated by the American Law Institute: ‘ ‘ For harm resulting to a third person [plaintiff] from the tortious conduct of another [Springs], a person [Marboro] is liable if he * * * (b) knows that the other’s conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself ” (4 Restatement, Torts, § 876),
The case at bar comes within the ambit of the Restatement. Springs’ acquisition of the photograph was an indispensable prelude to their use of it to defame the plaintiff. Marboro, in selling the photograph and artwork to Springs, performed an act which, in its turn, was a prerequisite to the tort of libel. If Marboro had not sold the photograph, Springs could not have altered it and used it to libel the plaintiff. Marboro’s act was thus, in my view, “ substantial assistance ” to Springs.
The general rule is that if the probable result of an act is injury to another, the actor cannot escape liability merely because his act was not the immediate cause of the injury, if the intervening cause was foreseen or reasonably foreseeable. (Prosser, Torts [2d ed.], pp. 268-270; 2 Restatement, Torts, §§ 441, 449; Beale, The Proximate Consequences of an Act, 33 Harv, L, Rev. 633-658.) Although the intervening act allegedly done by Springs here was intentionally tortious, the test of foreseeability still applies (2 Restatement, Torts, § 448); and, while these principles are generally stated to apply where *188 the act complained of is negligently done, a fortiori they should be held to apply where, as here, the actor is alleged to have willfully committed such act. That is what the plaintiff complains of in this count as against Marboro. The libel by Springs, of the plaintiff cannot be held as a matter of law to be an unforeseeable consequence of the sale of the photograph (cf. Palsgraf v. Long Is. R. R. Co., 248 N. Y. 339), since the pleading alleges in effect that the defendants Marboro were aware of and themselves intended the use to which the picture would be put by Springs. In the light of these allegations, no immunity accrues to Marboro from the fact that, at the time of the sale, the photograph was unaltered and not yet associated with material defamatory of the plaintiff.
The motion of the defendants Marboro to dismiss the third cause of action as insufficient upon its face is denied. However, since the count as stated is an amalgam of conclusion and confusion, it is dismissed on that ground, with leave to replead.
The defendants Magazines were the publishers of Springs’ advertising copy. Causes of action commingling allegations of invasion of the right to privacy and of freedom from defamation are alleged against them. If the claim is, as I have held, valid as against Springs, it is sufficient as against the Magazines, even in the absence of actual malice (Crane v. Bennett, 177 N. Y. 106, 109-110). Upon proof of libel and lack of consent, the plaintiff may recover against these defendants. The motions to dismiss causes of action numbered ££ Fifth”, “ Sixth” and ‘ ‘ Seventh ’ ’ for insufficiency on their face is, therefore, denied.
It does not follow, as urged by the plaintiffs, that the attack made by Marboro, Springs and the Magazines upon counts numbered ££ Third ” through “ Seventh ” was frivolous. Obviously, from what has been seen, the several motions of the respective defendants, brought on to test the sufficiency of these counts, whether successful or not, posed serious questions for judicial determination. It is the plaintiffs’ cross motion for an order granting judgment to them and against the defendants on causes “ Three ” through “ Seven ”, which is itself idle, frivolous and unjustified. Accordingly, it should be and is denied, with costs.
In the ‘£ Twelfth ’ ’ through £ £ Fifteenth ’ ’ counts, the plaintiff: husband pleads claims for alleged loss of consortium. The defendants sued here are Springs and the Magazines. The causes of action are based upon the claimed libel of the present plaintiff’s wife, committed by the defendants with intent to injure her, and without her consent thereto. The defendants urge that there is no cause of action therefor in the husband. *189 Insofar as the claim is grounded in libel, the defendants are in error. Of course, the cause of action in libel is personal to the wife. But, in addition, it is established law that the husband may recover the damages he himself has suffered by being deprived of his wife’s services and society because of the defendant’s maliciously tortious acts in publishing the libel (Olmsted v. Brown, 12 Barb. 657, 660; Garrison v. Sun Print. & Pub. Assn., 207 N. Y. 1, 10). On the other hand, if the causes of action pleaded by the husband were based solely upon, the invasion by the defendants of his wife’s right to privacy,, he would have no right- of action for any alleged resulting-damages to him. For an action under the Civil Rights Law is: statutory only and a derivative cause is not therein established! (see Gautier v. Pro-Football, 304 N. Y. 354, 358; Schumann v. Loew’s, Inc., 199 Misc. 38, 40; cf. Wyatt v. Hall’s Portrait. Studio, 71 Misc. 199, 202). However, as has been seen, in the: counts now under scrutiny (“ Twelfth ” through “ Fifteenth wherein the husband is the plaintiff) —as in the case of causes: numbered ‘ ‘ Fourth ’ ’ through ‘ ‘ Seventh ’ ’, wherein the wife: is the plaintiff- — -the pleading does not rely separately and independently upon rights established at common law and by statute-,, but upon both together, which, the single act of unauthorized! defamation invaded. And, this, as I have said, is proper in-this: type of action. I hold, therefore, that the husband does have-a cause of action for loss of services and society resulting from, a deliberate libel upon the wife not consented to by her.
But that is not all requiring consideration in a study of the sufficiency of these counts. For, in respect of damages, the-husband pleads merely that “ [b]y reason of [his wife’s]; suffering and injury, [he] was deprived of his wife and his: comfort and happiness in her society and companionship were: impaired.” (The question is presented whether that allegation suffices, I think that it does not. The plaintiff husband is not here suing for loss of “ services ”. Nor is there a claim that the husband incurred any monetary loss whatsoever as a result of the alleged libel upon his wife (such as medical disbursements, household expenses, or the like). He is suing, therefore, simply for loss of society. The wife herself is suing for her alleged anguish and humiliation, and the wife herself is suing for the alleged impairment of her earning power as a professional model.
Recently, in Kronenbitter v. Washburn Wire Co. (4 N Y 2d 524, 527, affg. 5 Misc 2d 961, affd. 4 A D 2d 936), where the wife was suing for the loss of her husband’s society, the court indicated that in an action merely for the loss of the society of *190 a spouse, “ there is a danger of duplicating elements of damage. Ingenious efforts must he made to disentangle from the wife’s recovery the constituents of the husband’s cause of action.” I recognize that in Kronenbitter the court was concerned with the negligent commission of a tort, and, here, we are concerned with the alleged deliberate commission of one. But, if I read aright the opinion on appeal, and if I understand correctly the trend there expressed, a claim for loss of society without loss of services is not, in any case, looked upon favorably by the Court of Appeals. A careful study of Garrison v. Sun Print. & Pub. Assn. (207 N. Y. 1, 10, supra) makes that clear even in respect of the views of the court a generation ago. It was there held that, where ‘£ the wife might have recovered damages for the mental distress and physical sufferings caused by the publication of defendant’s libel, it follows that plaintiff as her husband may maintain this action for loss of society and services. He had a right to these ” (italics mine). The allegations of the complaint are not set forth in the reports, but a reading of the opinion makes it quite plain (pp. 8-10) that the court was more concerned with a determination as to the right of recovery for loss of services than for impairment of society absent a claim for loss of services. And that is confirmed when, upon an examination of the record on appeal, the rather full and detailed allegation of special damages resulting from loss of services contained in the pleading then under study comes to light. (See, also, Kunz v. Silver, 198 Misc. 1032, 1033; Odgers, Libel and Slander [0th ed.], p. 456.)
The defendants’ motions to dismiss the counts numbered ££ Twelfth” through ££ Fifteenth ” for alleged insufficiency on their face are therefore granted, with leave to replead causes for loss of services and society, if such in fact there were.
The ££ Sixteenth” cause of action seeks- a declaration of rights as to the efficacy, past and future, of the release. The plaintiff is the model. The defendants are Marboro and Springs. Therein are alleged the claimed oral contracts hereinbefore set forth, a statement as to the intention and purpose of Avedon in furnishing the release to the plaintiff for her signature, a copy of the model release signed by her, that certain blank spaces therein were not filled in by her, assertions of trade usage and business custom, and the plaintiff’s practice in her business as a model, wherein, in the course of a year, she signs hundreds of such printed forms. What has already been said as to the effect of the model release signed by the plaintiff and as to .the contention of the availability of prior or contemporaneous oral agreements and of proof of usage and custom will not be *191 repeated here. Suffice it to say that it should appear from what I have already held, that, in my view, none of it raises a justiciable issue. (Cf. Bentrovato v. Crinnion, 206 Misc. 648, 653.) The issues which are to be the subject of the desired declaration were or are to be determined in the other causes, and there is no need for an additional count for a declaration. (Cf. Lakoff v. Lionel Corp., 207 Misc. 319, 324-325.) As the remedy of declaratory judgment is in the first instance discretionary with the court (Newburger v. Lubell, 257 N. Y. 383; Crantson v. Walton-164th St. Corp., 115 N. Y. S. 2d 331) and as there is no practical purpose in maintaining the “Sixteenth” cause (cf. James v. Alderton Dock Yards, 256 N. Y. 298, 305; Somberg v. Somberg, 263 N. Y. 1, 4-5; Orenstein v. Sheinman, 144 N. Y. S. 2d 510, 512, affd. 1 A D 2d 660), it is dismissed without leave to replead.
As has been seen, in respect of the sixteen causes of action contained in the amended complaint, I have dismissed several counts, some with and others without leave to replead. The result will be a substantial change in the make-up of the new complaint. In respect, therefore, of those corrective motions addressed to the form of the present pleading not herein disposed of, I think it better not to pass upon them definitively now, but to await the service of the new complaint by the plaintiffs. This the defendants may scan and attack as they may be advised. Accordingly, except insofar as herein disposed of, the corrective motions are denied, without prejudice to renewal as against and upon service of a second amended complaint. The plaintiffs may and are to serve such second amended complaint within 20 days after the service of a copy of the order to be entered hereon with notice of entry, upon the payment of motion costs to each defendant upon whom an amended complaint is so served plus the motion costs awarded hereinabove against the plaintiffs upon the denial of the motion made by them for judgment, against certain defendants because of their alleged frivolousness in moving to dismiss for insufficiency the £ ‘ Third ’ ’ through the £ £ Seventh ’ ’ causes of action. "Where no second amended complaint is served as against any defendant, the present complaint is dismissed with costs and judgment may be entered accordingly.
All of the motions before me in reference to the substantive sufficiency and mechanical propriety of the amended complaint are consolidated and are disposed of in accordance -with this opinion.
Settle one joint order reciting all of the papers on all of ' the motions.