The **CHASE MANHATTAN BANK**
v.
**Milton MAY, Appellant.**
**No. 13919.**

United States Court of Appeals Third Circuit.

Argued Oct. 18, 1962.

Decided Nov. 29, 1962.

Certiorari Denied Feb. 25, 1963.

See 83 S.Ct. 874.

Robert E. Kline, Pittsburgh, Pa. (John D. Ray, Beaver, Pa., Kennedy Smith, Pittsburgh, Pa., on the brief), for appellant.

David B. Buerger, Pittsburgh, Pa. (Robert L. Frantz, Buchanan, Ingersoll, Rodewald, Kyle & Buerger, Pittsburgh, Pa., Samuel Ross Ballin, Milbank, Tweed, Hope & Hadley, New York City, on the brief), for appellee.

Before McLAUGHLIN and HASTIE, Circuit Judges, and DUMBAULD, District Judge.

HASTIE, Circuit Judge.

In the district court, The Chase Manhattan Bank sued Milton May on his guaranty of certain loans and recovered. May has appealed.

The suit is within federal jurisdiction solely because of diversity of citizenship. The parties properly recognize that the contacts of the relevant transactions with New York are such that New York law controls contested legal issues concerning the reach of the parol evidence rule and the validity of alleged oral modifications of a written guaranty.

The circumstances of the original contracting are undisputed. May was the organizer and majority shareholder of States Grain Corporation, which engaged in the buying and selling of grain. Beginning in 1940 and thereafter in the normal course of business, the corporation financed many of its transactions by borrowing from The Chase Manhattan Bank. In 1947, when the corporation's line of credit was substantially increased, May, at Chase's request, personally guaranteed future loans to the corporation. The instrument of guaranty, a form prepared for general use by Chase, comprehensively covered loans "with or without security". Subsequently, the corporation was unable to repay its borrowings, and this suit was filed against May as guarantor for about $700,000, plus interest.

In defending against this claim, May sought to prove that when the guaranty was given the parties understood and Chase orally promised that loans to the corporation would be made only upon adequate security in the form of collateral supplied by the borrower. May also offered to prove a custom of the trade to the same effect. The district court held both lines of testimony inadmissible. The correctness of those rulings is the first question on this appeal.

The New York decisions applying the parol evidence rule distinguish contemporaneous oral agreements contradictory to a written contract from those which supplement the writing. While the latter may be enforceable, it is clear that the former are not. With Fadex Foreign Trading Corp. v. Crown Steel Corp., 1947, 272 App.Div. 273, 70 N.Y.S.2d 892, aff'd, 1948, 297 N.Y. 903, 79 N.E.2d 739, and American Trust Co. v. Sullivan, 1955, 285 App.Div. 1043, 140 N.Y.S.2d 184, aff'd, 1957, 2 N.Y.2d 954, 162 N.Y.S.2d 358, 142 N.E.2d 423, compare Hicks v. Bush, 1962, 10 N.Y.2d 488, 225 N.Y.S.2d 34, 180 N.E.2d 425. See also Restatement, Contracts § 240, comment *b*. Recognizing this distinction, appellant argues that the alleged oral understanding between lender and guarantor, that only adequately secured loans would be made, is somehow consistent with the written promise to guarantee both secured and unsecured loans.

But it is not asserted that the alleged oral understanding was an independent contract, a promise supported by its own consideration. The appellant claims merely that an oral assurance that there would be no unsecured loans constituted a defense against the otherwise enforceable contemporaneous written promise to guarantee unsecured loans. Thus analyzed, the offer of proof was an inadmissible parol contradiction of a plain provision of a written contract.

 Appellant's reliance upon a usage and custom of requiring security for such loans as these is also misplaced. The New York cases follow the teaching of Hopper v. Sage, 1889, 112 N.Y. 530, 535, 20 N.E. 350, 351–352, that "[u]sage and custom cannot be proved * * * to alter or contradict the express or implied terms of a contract free from ambiguity or to make the legal rights or liabilities of the parties to a contract other than they are by the terms thereof". See Western Union Tel. Co. v. American Communications Ass'n, 1949, 299 N.Y. 177, 86 N.E.2d 162; Russell v. Marboro Books, 18 Misc.2d 166, 183 N.Y.S.2d 8; George Colon Contracting Corp. v. Morrison, Sup.Ct.1954, 162 N.Y.S.2d 841, 880–881, aff'd, 1956, 2 App.Div.2d 869, 157 N.Y.S.2d 927, appeal denied, 1957, 3 App.Div.2d 690, 158 N.Y.S.2d 797, appeal denied, 1957, 2 N.Y.2d 710, 141 N.E.2d 319. Moreover, in this case proof that loans are normally not made without security would not help the appellant. For the existence of such a custom would indicate no more than that appellant's guaranty expressly covered unusual loans as well as customary ones. Certainly, the guaranty would be no less binding on that account.

 Next, even if the oral agreement said to have attended the execution of the guaranty is invalid, appellant argues that the court below erred in excluding testimony concerning alleged subsequent conversations wherein the bank agreed with May that only loans secured by adequate collateral would be made to the corporation.

Relevant to this issue is the following provision of the guaranty itself:

"This guaranty shall continue in full force and be binding upon the undersigned * * * and the Bank may continue to act in reliance hereon until the receipt by the Bank of written notice from the undersigned * * * not to give further accommodation hereunder."

We think the plain meaning of this provision is that modification or revocation of the guaranty can be accomplished only by an appropriate written communication from the guarantor to the prospective lender.

The legal effect of this stipulation must be determined in the light of Section 33–c of the New York Personal Property Law, 40 Consolidated Laws, c. 41, McKinney's 1962, § 33–c, which reads as follows:

"§ 33–c. *When written agreement or other instrument cannot be changed by oral executory agreement, or discharged or terminated by oral executory agreement or oral consent or by oral notice.*

"1. A written agreement or other written instrument which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought or by his agent."

Were this a matter of first impression, it would be arguable that Section 33–c does not cover an instrument of guaranty because such a writing is only a continuing offer capable of ripening into one or more unilateral contracts as credit is subsequently extended to the specified borrower. However, we must be guided by a recent New York case in which both the trial judge and the Appellate Division held that Section 33–c is applicable to a provision of a written guaranty requiring a writing for the modification or revocation of the guar-

antor's promissory undertaking. Associated Food Stores, Inc. v. Siegel, 1960, 10 App.Div.2d 1003, 205 N.Y.S.2d 208, modifying 20 Misc.2d 952, 193 N.Y.S.2d 500, aff'd 1961, 9 N.Y.2d 816, 215 N.Y.S.2d 764, 175 N.E.2d 343. In the cited case the Appellate Division disagreed with the trial judge on the question whether the language of the guaranty there in suit should be interpreted as requiring a writing to revoke the guarantor's promise as well as to modify it. But we have no such problem here. Any oral withdrawal from so much of May's undertaking as covered unsecured loans would be in derogation of his undertaking that his guaranty should "continue in full force" until he should give the bank written notice to the contrary.

■ One additional point must be considered in connection with a counterclaim May has filed for the value of certain securities he had deposited with Chase. The bank later sold these securities, using the proceeds in partial satisfaction of May's obligation on his guaranty. May's present contention is that the trial court erroneously refused to submit to the jury a disputed question of fact whether, in depositing these securities with the bank, May authorized their use as security for his guaranty. But here again, the instrument of guaranty itself is controlling. It contains the following provision:

"As security for the obligations of the undersigned hereunder, the undersigned hereby pledge(s) to the Bank and give(s) it a general lien upon * * * all money, negotiable instruments, commercial paper, notes, bonds, stocks, credits and choses in action, or any interest in any thereof, and any other property, rights, and interest, of the undersigned, or any evidence thereof, which have been or at any time shall be delivered to or otherwise come into the possession or custody or under the control of the Bank * * * and, in the event of a default hereunder, the Bank * * * may sell or cause to be sold * * * all or any of such security, * * * without demand of performance or notice of intention to sell or of time or place of sale. * * * *"

In the light of this provision it does not matter whether particularized authorization was given for the securities which Chase sold.

■ Finally, appellant's argument that the bank had to prove its reliance on the guaranty is unsound. This is a suit on a contract. It appears on the face of the guaranty that the exchange bargained for was the making of loans by the bank to States Grain Corporation in exchange for May's promise to be responsible for any default by the borrower. Having received what he bargained for, the lending of money to the corporation, May cannot insist that the bank prove more.

Our conclusion that the guaranty covered loans made to the corporation without security makes it unncessary for us to consider contentions of the appellant concerning the way in which the bank determined the amount of collateral to be required of the borrower from time to time.

The judgment will be affirmed.