B. M. HEEDE, INC., Respondent, *v.* FREDERIC P. ROBERTS et al., Copartners Doing Business under the Name of ROBERT & COMPANY, et al., Appellants.

Argued October 11, 1951; decided January 17, 1952.

*Copal Mintz* for appellants.  I. Reliance on an alleged war-
ranty, is a *sine qua non* of an action for breach of warranty,
irrespective of whether the warranty is express or implied.
(*Gaylord Mfg. Co.* v. *Allen,* 53 N. Y. 515; *Reed* v. *Randall,* 29
N. Y. 358; *Studer* v. *Bleistein,* 115 N. Y. 316; *Waeber* v. *Talbot,*

167 N. Y. 48; *Hawkins* v. *Pemberton,* 51 N. Y. 198; *Heath Dry Gas Co.* v. *Hurd,* 193 N. Y. 255; *Henry & Co.* v. *Talcott,* 175 N. Y. 385; *American Waste Co.* v. *St. Mary,* 210 App. Div. 383; *Miller* v. *Schloss,* 218 N. Y. 400; *Chinnery* v. *Kennosset Realty Co.,* 286 N. Y. 167; *Grombach Productions, Inc.,* v. *Waring,* 293 N. Y. 609; *Crocker-Wheeler Elec. Co.* v. *Johns-Pratt Co.,* 29 App. Div. 300, 164 N. Y. 593.) II. In view of plaintiff's affirmative testimony that the presence or absence of an emulsifier was of no materiality to it and the contract would have been signed by it if it had specified the presence of an emulsifier, the complaint should have been dismissed on defendants' motion at the end of plaintiff's case and surely at the end of the entire case. (*Backhous* v. *Wagner,* 234 N. Y. 429; *Bank of United States* v. *Manheim,* 264 N. Y. 45; *Fealey* v. *Bull,* 163 N. Y. 397; *Blum* v. *Fresh Grown Preserve Corp.,* 292 N. Y. 241; *Matter of Case,* 214 N. Y. 199; *Laidlaw* v. *Sage,* 158 N. Y. 73.) III. Reversible error was committed in excluding the testimony of chemical traders as to the meaning of the contract terms. (*Atkinson* v. *Truesdell,* 127 N. Y. 230; *Smith Co.* v. *Moscahlades,* 193 App. Div. 126; *Krstovic* v. *Van Buren,* 235 N. Y. 96.) IV. Plaintiff offered no competent evidence of damages. V. The record presents a fatal variance between pleading and the proof or theory of recovery. (*Cohen* v. *City Co. of N. Y.,* 283 N. Y. 112.)

*Monroe J. Cahn* and *Herbert S. Greenberg* for respondent. I. Since the recovery herein was based upon breach of the implied warranty of description, reliance was not essential to recovery. (*Hawkins* v. *Pemberton,* 51 N. Y. 198; *Bach* v. *Levy,* 101 N. Y. 511; *Henry & Co.* v. *Talcott,* 175 N. Y. 385; *Lumbrazo* v. *Woodruff,* 256 N. Y. 92; *Carleton* v. *Lombard, Ayres & Co.,* 149 N. Y. 137; *Hoe* v. *Sanborn,* 21 N. Y. 552; *Miller* v. *Schloss,* 218 N. Y. 400; *Laskey* v. *Rubel Corp.,* 303 N. Y. 69.) II. The proof did not establish that plaintiff's salesman did not expect that the goods would conform to the description. (*Marine Trust Co. of Buffalo* v. *Willis,* 240 App. Div. 176; *Kochmann* v. *Baumeister,* 73 App. Div. 309; *State Bank* v. *Brockton Fruit Juice Co.,* 208 N. Y. 492; *Laskey* v. *Rubel Corp.,* 303 N. Y. 69; *Porter* v. *Commercial Cas. Ins. Co.,* 292 N. Y. 176; *Hutchison* v. *Ross,* 262 N. Y. 381.) III. No error was committed with respect to the exclusion of evidence regarding the trade understanding of the meaning of the contract. (*Lawrence* v. *Maxwell,* 53 N. Y.

19; *Gravenhorst* v. *Zimmerman,* 236 N. Y. 22; *Matter of Western Union Tel. Co. (ACA),* 299 N. Y. 177.) IV. Plaintiff's damages were fully proved upon undisputed evidence. (*Brown & Co.* v. *Darling & Co.,* 238 App. Div. 487; *Atkins* v. *Elwell,* 45 N. Y. 753; *Asbestos Pulp Co.* v. *Gardner,* 39 App. Div. 654; *Trankla* v. *McLean,* 18 Misc. 221; *Travelers Ins. Co.* v. *Pomerantz,* 246 N. Y. 63.) V. The theory of recovery was authorized by the complaint. (*Livingston* v. *Livingston,* 246 N. Y. 234.)

LEWIS, J. This action, for breach of an implied warranty in a sale by description, arose as a result of the purchase by the plaintiff from the defendants of 80,000 pounds of a chemical known as dibutyl phthalate. In the litigation which followed the plaintiff has thus far successfully maintained that the material delivered under the contract in suit did not meet the commercial standard for dibutyl phthalate whereas, as plaintiff claims, the defendants had warranted that it would meet the test of commercial standards in all respects except for color.

The case is here upon the defendants' appeal by our leave from a judgment of the Appellate Division unanimously affirming a judgment entered upon a jury's verdict at Trial Term in favor of the plaintiff.

A brief statement of facts of record will make clear the basis of our conclusion that the defendants' challenge to an evidentiary ruling affords a valid basis for reversal and a new trial: The chemical known as dibutyl phthalate — a compound of butyl alcohol and phthalic acid — has a variety of industrial uses including its use as a plasticizer in the plastic industry, as a lubricant, and in leather dressing. When it conforms with commercial standards dibutyl phthalate is water-white in color, insoluble in water, and is 98% to 100% pure dibutyl phthalate. Mixed with an emulsifier the resulting chemical occasionally is employed as an insect repellent and when so used the concentration of dibutyl phthalate is below the commercial standard.

The decisive issue at the trial herein was whether the chemical delivered to the plaintiff by the defendants conformed to the following specifications set forth in a written contract prepared by the defendants to govern the transaction:

" MATERIAL: DIBUTYL PHTHALATE

SPECIFICATIONS: OFFTEST — PALE YELLOW, AS PER SAMPLE "

There was evidence from which a jury could find that the chemical delivered by the defendants did not meet the commercial standard for dibutyl phthalate in all respects except for color; that the chemical delivered consisted of dibutyl phthalate to the extent only of 90% to 94%, the balance being an emulsifier introduced to produce a compound commonly used as an insect repellent. When that evidence came into the record the inquiry became material whether, as claimed by the plaintiff, the contract called for delivery by the defendants of dibutyl phthalate of commercial standard except for color, or, as claimed by the defendants, the contract requirements were satisfied when defendants delivered the contract quantity of dibutyl phthalate which in quality failed to meet commercial standards not only in respect of color but also in other unspecified respects. That inquiry and the issue thus engendered became the subject of a court ruling. Although the defendants were permitted by expert testimony to prove the trade meaning of the term " offtest " and of the phrases "per sample " and " offtest, per sample," as they appear *separately* in the contract clause, the court on plaintiff's objection excluded evidence proffered by the defendants that in the chemical trade the *entire* contract clause " MATERIAL: Dibutyl Phthalate SPECIFICATIONS: Offtest — Pale yellow, as per sample " had an accepted trade meaning. Such evidence, if competent, might well have been a factor for consideration in determining the liability of the defendants. We think the proffered evidence was competent.

The plaintiff seeks to justify the exclusion of testimony which would have defined the trade significance of the contract specification clause, read in its entirety, upon the asserted ground that the meaning of the entire clause was a question for the jury. True it is that the meaning of the entire specification clause was an important factor to be considered by the jury. We do not think it follows, however, that evidence of the meaning ascribed by trade usage to a crucial clause of the contract here in suit should have been excluded. Throughout the taking of testimony and in the court's charge the contract, with special reference to the specifications clause, was treated as ambiguous. In view of that circumstance and to aid a lay-minded jury to understand what was meant by language

employed by the contracting parties — each of whom was engaged in business involving the technical terminology of chemistry — we regard as error the exclusion of evidence explanatory of the contract specifications expressed in a clause which bears an accepted trade interpretation, provided, of course, that evidence did not contradict the terms of the contract. In this instance the introduction of proof of the trade meaning ascribed to the specifications clause would not usurp the function of the jury. Such evidence would serve only to aid the jury in determining what the parties may have meant by the clause upon the interpretation of which a factual decision might rest.

For that conclusion we find support in the rule of *Atkinson* v. *Truesdell* (127 N. Y. 230, 234): " * * * the rule may be regarded as well settled, that the meaning of characters, marks, letters, figures, words or phrases used in contracts, having purely a local or technical meaning, unintelligible to persons unacquainted with the business, may be given and explained by parol evidence if the explanation is consistent with the terms of the contract. So, also, parol evidence may be given as to the uniform, continuous and well settled usage and custom pertaining to the matters embraced in the contract, unless such usage and custom contravene a rule of law, or alter or contradict the expressed or implied terms of a contract, free from ambiguity." (See, also, *Mutual Chemical Co.* v. *Marden, Orth & Hastings Co.*, 235 N. Y. 145, 151; *Oswego Falls Pulp & Paper Co.* v. *Stecher Lithographic Co.*, 215 N. Y. 98, 108; *Underwood* v. *Greenwich Ins. Co.*, 161 N. Y. 413, 423–425; *Newhall* v. *Appleton,* 114 N. Y. 140, 143–144.)

The judgments should be reversed and a new trial granted, with costs to abide the event.

LOUGHRAN, Ch. J., CONWAY, DYE and FROESSEL, JJ., concur with LEWIS, J.; DESMOND and FULD, JJ., dissent and vote for affirmance on the ground that the trial court's ruling, described in the prevailing opinion of this court, was correct, and that, even if erroneous, it could not have influenced the decision by the jury of this issue of fact, already thoroughly tried out before two juries.

Judgments reversed, etc. [See 303 N. Y. 909.]