**MARINE MIDLAND GRACE TRUST COMPANY OF NEW YORK,**
Plaintiff,

v.

**BANCO DEL PAIS, S. A., Defendant.**
No. 66 Civ. 275.

United States District Court
S. D. New York.
Dec. 7, 1966.

Sullivan & Cromwell, New York City, for plaintiff. William E. Willis, John E. Donnelly, New York City, of counsel.

Milbank, Tweed, Hadley & McCloy, New York City, for defendant. Edward J. Reilly, Jr., Briscoe R. Smith, New York City, of counsel.

## OPINION

McLEAN, District Judge.

Both plaintiff and defendant move for summary judgment in this action. The complaint seeks recovery of $256,153.84 upon an overdraft resulting from the fact that plaintiff paid checks drawn by defendant upon its account with plaintiff, although there were no funds on deposit in the account to cover the checks. Defendant's answer alleges that there were sufficient funds on deposit. It is apparent from the motion papers that defendant means that there should have been adequate funds, but that plaintiff wrongfully failed to credit defendant's account with the amount of certain drafts presented by defendant to plaintiff under four letters of credit issued by plaintiff. The question thus turns upon whether plaintiff properly refused to honor the drafts.

Many of the facts are undisputed. They may be summarized as follows:

On August 26, 1965, August 30, 1965, September 3, 1965 and September 7, 1965, plaintiff issued its letters of credit numbered respectively 146531, 146576, 146723 and 59425, in the respective amounts of $26,738, $51,000, $53,382 and $120,000, each in favor of Ricardo Nevares Ocampo, Mexico, D. F. Each letter of credit stated that the credit was transferable by Ocampo. In each letter of credit plaintiff undertook to pay drafts presented under it when accompanied by certain specified documents pertaining to shipments of mercury. Three letters of credit specified that the documents should include "full set clean on board truckers bills of lading." The fourth letter of credit, No. 146576 dated August 30, 1965, specified "Full Set Clean On board ocean bills of lading issued to the order of MARINE MIDLAND GRACE TRUST COMPANY OF NEW YORK, N. Y., marked notify:—J. CLETON & CO. N.V., P.O. BOX 193, ROTTERDAM, HOLLAND.'

This letter of credit specified that the goods were to be shipped "PER S/S 'SCHAVENBURG' (OZEAN STINNES LINES)."

Three of the letters of credit stated that the credit was subject to the "Uniform customs and practice for Commercial Documentary Credits fixed by the Thirteenth Congress of the International Chambers of Commerce" ("Thirteenth Congress Rules"). One, No. 59425, dated September 7, 1965, stated that it was subject to "THE UNIFORM CUSTOMS AND PRACTICE FOR DOCUMENTARY CREDITS 1962 REVISION INTERNATIONAL CHAMBER OF COMMERCE BROCHURE NO. 222" ("1962 Revision").[1]

These two sets of rules for letter of credit transactions contain two provisions which are pertinent here. The first relates to the procedure to be followed by the issuing bank when a draft drawn under its letter of credit is presented to it for payment and the issuing bank claims that the documents accompanying the draft do not conform to the terms of the credit. Article 10 of the Thirteenth Congress Rules provides:

"If such claim is to be made, notice to that effect, stating the reasons therefor, must be given by cable or other expeditious means to the Bank demanding reimbursement and such notice must state that the documents are being held at the disposal of such Bank or are being returned thereto. The issuing Bank shall have a reasonable time to examine the documents."

Article 8 of the 1962 Revision contains a substantially identical provision.

The second relates to on board bills of lading. Article 23 of the Thirteenth Congress Rules provides:

"When a shipment is stipulated 'On Board', the loading on board can be evidenced by means of a notation signed or initialed on behalf of the carrier. If the Bill of Lading is presented after the ultimate shipment date specified in the credit, the said notation must be dated and this date shall be considered as the date of loading on board and shipment."

The 1962 Revision sets forth under the heading "Marine Bills of Lading" the following under Article 18:

"Loading on board may be evidenced by an on board Bill of Lading or by means of a notation to that effect dated and signed or initialled by the carrier or his agent, and the date of this notation shall be regarded as the date of loading on board and shipment."

The 1962 Revision also contains another section headed "Other Shipping Documents, etc." under which Article 22 provides, in pertinent part, as follows:

"Banks will consider * * * Trucking Company Bill of Lading or any other similar document as regular when such document bears the reception stamp of the carrier or issuer, or when it bears a signature."

On September 17, 1965, defendant presented to plaintiff drafts drawn under letters of credit Nos. 146531, 146723 and 59425 by Alvaro Ocampo Vales, who eventually was shown to be the assignee of Ricardo Nevares Ocampo, in whose favor the credits had been originally issued. These drafts were accompanied by various documents, including a document purporting to be a truckers bill of lading. On September 20, 1965, plaintiff cabled to defendant as follows:

"YOUR OP156/8 CREDITS 59425 $120,000 146723 $53382 146531 $26738 NOT PAID BECAUSE FORWARDERS RECEIPTS PRESENTED INSTEAD ON BOARD TRUCKERS BILLS OF LADING AS REQUIRED STOP UNDERSTAND INSPECTION CERTIFICATE FRAUDULENT PLEASE INVESTIGATE THROUGH SOCIEDAD GENERAL MEXICANA MEXICO D.F. AS BUY-

---

1. Because of this reference to the Thirteenth Congress Rules and the 1962 Revision, Article 5 of the New York Uniform Commercial Code, relating to letters of credit, does not apply to this case. N.Y.U.C.C. § 5–102(1).

ERS CONTACTED THEM AND WERE ADVISED CERTIFICATES NUMBERS NOT THEIRS ALSO SIGNER UNKNOWN INSTRUCT"

To this defendant replied by cable dated September 23, 1965 (received by plaintiff on September 24), as follows:

"WE REFER TO YOUR CABLE OF THE 20TH INSTANT; WE ARE SURE YOU WILL HONOR YOUR LETTERS OF CREDIT NUMBERS 59425 FOR DOLLARS 120,000.00 146723 FOR DOLLARS 53,382.00 146531 FOR DOLLARS 26,738.00 BECAUSE THE RESPECTIVE DOCUMENTS WHICH WE FORWARDED TO YOU SATISFY THE REQUIREMENTS INDICATED IN YOUR AFOREMENTIONED LETTERS OF CREDIT WE TRUST YOU WILL IMMEDIATELY CREDIT TO US THE AMOUNT OF SAID LETTERS OF CREDIT ADVISING US BY CABLE."

In the meantime, on September 20, defendant presented to plaintiff a draft drawn by Vales under the fourth letter of credit No. 146576. This is the one which required on board ocean bills of lading instead of truckers bills of lading.

On September 22 plaintiff cabled to defendant with respect to this draft as follows:

"YOUR REFERENCE LETTER DATED 15TH DOLLARS FIVEONE-ZEROZEROZERO OUR CREDIT 146576 UNPAID COPIES OF BILLS OF LADING PRESENTED NOT ON BOARD SHOWS FREIGHT PREPAID INVOICES SHOW FOB STEAMER PORT OF DISCHARGE OMITTED SHIPMENT EFFECTED SWEDISH AMERICAN LINE STOP UNDERSTAND INSPECTION CERTIFICATE FRAUDULENT PLEASE INVESTIGATE THROUGH SOCIEDAD GENERALE MEXICANA MEXICO DF AS BUYERS CONTACTED THEM AND WERE ADVISED CERTIFICATE NUMBERS NOT THEIRS ALSO SIGNER UNKNOWN INSTRUCT"

Defendant made no reply to this cable.

On September 27, plaintiff cabled to defendant with respect to all four letters of credit. This cable read:

"YOURS 24TH CREDITS 59425 146531 146723 AND 146576 $251,120.-00 YOUR REFERENCE OP156/8 AND LETTER DATED 15TH SEPTEMBER UNPAID BILLS OF LADING NOT MARKED ON BOARD ALSO LETTER OF TRANSFER NOT INCLUDED WITH DOCUMENTS HOLDING DOCUMENTS AT YOUR DISPOSAL INSTRUCT URGENTLY"

On September 30, defendant replied to plaintiff's cable of September 27 as follows:

"YOUR CABLE OF THE DAY BEFORE YESTERDAY. WE CONFIRM OUR CABLE OF THE 23RD. TRANSFER LETTER OF YOUR LETTER OF CREDIT 59425 SENT WITH OUR LETTER OF SEPTEMBER 14. ENCLOSING RESPECTIVE DRAFT. YOUR LETTERS OF CREDIT 146531, 146576 and 146723 TRANSFER LETTERS REQUESTED BY YOU, ORIGINALS ARE IN OUR POSSESSION. WE ARE SENDING YOU PHOTOSTATIC COPIES BY MAIL. WITH RESPECT TO BILL OF LADING RELATING TO LETTER OF CREDIT NUMBER 59425 PLEASE SEND US PHOTOSTATIC COPY TAKEN BY YOURSELVES IN ORDER TO RETURN IT TO YOU WITH THE PROPER EXPLANATIONS."

On October 1 plaintiff wrote a letter to defendant listing the claimed defects in the documents which had accompanied the four drafts. Some of these defects had not previously been mentioned by plaintiff in its cables. The letter concluded:

"The documents referred to above are being held by us for your disposal. Please advise us as to their disposition."

On October 2 defendant wrote to plaintiff enclosing copies of the assignments from Ocampo to Vales of the letters of

credit Nos. 146531, 146576 and 146723. Nothing further happened until November 29, 1965 when defendant finally answered plaintiff's letter of October 1. Defendant stated:

"We take the liberty of hereby confirming to you that the payments made by us under the four above-mentioned letters of credit were correct, without the falsification of the documents relating to each of the said letters of credit being attributed either to Banco del Pais, S.A. or to you. In accordance with the General Rules concerning letters of credit, the Banks intervening in the payment of said letters of credit are not liable for the falsification of the documents, or for the adequacy, accuracy and authenticity thereof."

The letter concluded:

"Furthermore, we must add that you have not as yet replied to our cable of September 23, and that for the reasons set forth in this letter and in our aforementioned cable, we hereby confirm to you our original position and opinion, in the sense that the payments we made with respect to the four letters of credit referred to above were correct, regretting, as much as you do, such falsification referred to by you, of which we had no knowledge until we received your cable of September 20. By that time we had already made the payments."

Defendant claims that the documents which accompanied three of the drafts, those drawn under letters of credit 146531, 146723 and 59425, complied with the terms of the credits and that therefore plaintiff wrongfully refused to honor the drafts. Defendant concedes that the documents which accompanied letter of credit No. 146576, the one which required a marine on board bill of lading, were not in order.

Defendant further contends, as to all four letters of credit, that plaintiff did not comply with the Thirteenth Congress Rules (or in the one case, with the 1962 Revision) because it did not assert its position as to the documents within a reasonable time after they were presented. This contention breaks down into two parts: (a) under the Rules, in order to make a valid rejection of the documents, the issuing bank, i. e., plaintiff, must use the identical words mentioned in the Rules, and must expressly state "we are holding the documents at your disposal"; (b) defendant did not use these words until its cable of September 27, which was ten days after the first three drafts were presented, and seven days after the presentation of the fourth draft. This period, says defendant, is not a reasonable time.

There is a sharp dispute in the affidavits as to the custom followed by bankers in interpreting and applying the so-called uniform rules. As to the first point raised by defendant, plaintiff's affidavit states that it is normal banking practice to use the word "instruct," which "bankers understand to indicate that the retained defective documents are being 'held at the disposal' of the presenting bank." Defendant, on the other hand, has submitted an affidavit which states "the issuing bank must *specifically* inform the negotiating bank that it is holding the documents at its disposal or that they are being returned." [2]

As to defendant's second point, plaintiff's affidavit states that "New York banks normally consider a 'reasonable time' to be a period of approximately ten working days or two calendar weeks." Defendant's affidavit, on the contrary, asserts that a reasonable time is, at most, three business days.

Of course, as to three letters of credit, we do not reach this question of interpretation of the Rules if, as defendant claims, the documents complied with the terms of the credits. Hence that question must first be considered.

▮▮▮▮ In my opinion, the documents did not comply. The truckers bills of lading did not state that the goods were "on board" the trucks. They bore no such notation signed, initialled or stamp-

2. Underscoring in original.

ed by the carrier. This was an essential requirement of the letter of credit and these requirements must be strictly complied with. Anglo-South American Trust Co. v. Uhe, 261 N.Y. 150, 184 N.E. 741 (1933); Lamborn v. Lake Shore Banking & Trust Co., 196 App.Div. 504, 188 N.Y.S. 162 (1st Dept. 1921), aff'd mem. 231 N.Y. 616, 132 N.E. 911 (1921); North Woods Paper Mills Ltd. v. National City Bank of New York, 121 N.Y.S.2d 543 (Sup.Ct. 1953), aff'd mem. 283 App. Div. 731, 127 N.Y.S.2d 663 (2d Dept. 1954).

■ Defendant's affidavits say that in Mexico it is not customary for truckers bills of lading to specify that the goods are "on board." They say that these bills of lading were in the customary Mexican form. I believe that the Mexican custom is immaterial. Dixon, Irmaos & Cia., Ltda. v. Chase Nat. Bank of City of New York, 144 F.2d 759 (2d Cir. 1944), cert. denied, 324 U.S. 850, 65 S.Ct. 687, 89 L.Ed. 1410 (1945); Vietor v. National City Bank of New York, 200 App.Div. 557, 193 N.Y.S. 868 (1st Dept. 1922), aff'd mem. after remand, 237 N.Y. 538, 143 N.E. 733 (1923).

■ Defendant also claims that in any event, a document other than the bill of lading, i. e., the inspection certificate, showed that the goods were in fact on board the trucks, and that plaintiff should have been satisfied by this. Wholly apart from the fact that there was apparently reason to believe that the inspection certificates were forged, a point which will be considered hereinafter, I do not believe that the inspection certificates, taken at face value, support defendant's claim. They say that "the loading of the" flasks "was personally supervised by us, verifying that all our seals were intact at loading." Strictly speaking (and we must speak strictly in this situation), this statement, even if true, does not say that all the goods were actually loaded on board the trucks.

Thus, we are faced with the question as to whether in initially rejecting the documents plaintiff used the right words,

or if it did not, whether its eventual use of the right words was within a reasonable time. We are dealing here, not with the construction of a statute, but with the interpretation of a contract, which specifically incorporated by reference the Thirteenth Congress Rules, or the rules of the 1962 Revision. The question is what the contract means.

If I were to disregard the affidavits and consider only the language of the rules themselves, I would conclude that defendant is correct in saying that seven or ten days is not a reasonable time, but that plaintiff is correct in asserting that the word "instruct" is reasonably equivalent to "holding at your disposal." It seems unlikely that this business has become so formalized that the rights of the issuing bank depend upon its employment of a single magic formula. If I were so to hold, it would follow that plaintiff is entitled to summary judgment, for it used the word "instruct" promptly upon receipt of the documents.

But I am not at liberty on this motion to disregard the affidavits and to follow my own common sense. Both parties have seen fit to submit affidavits as to the custom and practice of banks in applying these uniform rules. Presumably, both parties believe that this custom and practice is relevant to the interpretation of the contract of which these rules form a part. There is authority in support of this belief.

See Dixon, Irmaos & Cia., Ltda. v. Chase Nat. Bank of City of New York, supra; B. M. Heede, Inc. v. Roberts, 303 N.Y. 385, 103 N.E.2d 419 (1952); Vietor v. National City Bank of New York, supra.

These affidavits are in square conflict. I cannot determine on the basis of these papers what the custom and practice is. There is therefore a dispute as to a material fact. The presence of that dispute requires the denial of both motions.

■■ Although this disposes of the matter as far as these motions are concerned, it seems advisable to note a further point which has not been raised by

either party. It is apparent from the correspondence heretofore quoted that plaintiff was advised at the outset that the documents were forged. Plaintiff so informed defendant. Defendant ignored this notice until weeks later, when finally, in its letter of November 29, it practically conceded the forgery. If these documents were forged, and if defendant in accepting them from Vales was not a holder in due course, then plaintiff was justified in refusing to pay. Old Colony Trust Co. v. Lawyers Title & Trust Co., 297 F. 152 (2d Cir. 1924), cert. denied, 265 U.S. 585, 44 S.Ct. 459, 68 L.Ed. 1192 (1924); Sztejn v. J. Henry Schroder Banking Corp., 177 Misc. 719, 31 N.Y.S. 2d 631 (1941).

Whether they were forged is a question of fact. Whether defendant was a holder in due course may depend upon questions of fact. The existence of these questions would require the denial of defendant's motion for summary judgment in any event. It would seem that these questions should be explored at the trial.

Both motions are denied.

So ordered.