**BANCO ESPANOL de CREDITO,**
**Plaintiff,**

v.

**STATE STREET BANK AND TRUST**
**COMPANY, Defendant.**

Civ. A. Nos. 64–448, 64–569.

United States District Court
D. Massachusetts.

March 27, 1967.

Charles C. Cabot, Robert E. Sullivan, Herrick, Smith, Donald, Farley & Ketchum, Boston, Mass., for plaintiff Banco Espanol de Credito.

Mark A. Michelson, James C. Heigham, Charles F. Choate, Choate, Hall & Stewart, Boston, Mass., Lawrence R. Cohen, Boston, Mass., for State Street Bank and Trust Company.

## OPINION

FRANCIS J. W. FORD, District Judge.

These are two actions by Banco Espanol de Credito, a corporation of Spain, against the State Street Bank and Trust Company, a Massachusetts corporation, based upon two irrevocable letters of credit issued by defendant on or about November 15, 1962 at the request of defendant's customer, Robert Lawrence, Inc. for the benefit of certain Spanish manufacturers from whom Lawrence was ordering certain garments. In No. 64–448–F the letter of credit No. 4125 was in the amount of $105,000 (later increased to $151,500) in favor of Manufacturas Alcides S.L. In No. 64–569–F the letter No. 4124 was in the amount of $46,560 in favor of a firm known as Longuer.

The letters as originally issued authorized payment of drafts accompanied by (1) signed invoices, (2) customs invoices, (3) bills of lading to order of defendant and (4) an inspection certificate. By amendments to each letter dated March 1, 1963 and accepted respectively on March 7 and March 12, 1963 it was provided that the inspection certificate should be issued by a Spanish inspection organization, Supervigilancia Sociedad General de Control S.A. "certifying that the goods are in conformity with the order."

The goods were manufactured and shipped, drafts were drawn by the manufacturers (by Alcides in the amount of $96,394.96 and by Longuer in the amount of $11,032.40), and negotiated to plaintiff bank which forwarded them to defendant which received them on April 1, 1963. After examination of the documents defendant on April 3, 1963 notified plaintiff it was rejecting the drafts and refusing payment on the ground that the inspection certificates did not comply with the letters of credit. In each case plaintiff later submitted an addendum to the inspection certificate. Defendant in each case notified plaintiff its position was unchanged and refused to pay the drafts.

The inspection certificates executed by Supervigilancia were lengthy documents. The certificate as to the Alcides goods reads in part:

"WE HEREBY CERTIFY: That on March 12th. 1963, and with a view to comply with conditions stipulated in the irrevocable Bank credit no. 4125/35636 opened by the State Street Bank and Trust Company, Boston 1, Mass. USA, the Firm Manufacturas Alcides S.L.-Barcelona, did require us, to carry out the inspection and ascertainment of:

5.500—RAINCOATS.

6.000—BEACH JACKETS.

destined to the orderer of said credit, Firm ROBERT LAWRENCE INC., Boston, Massachusetts. That we have effected the inspection and ascertainment of the merchandise, basing ourselves on the details shown in the orders or Stocksheets Nos. 101, 102 and 103, dated November 5th. 6th and 13th November 1962 and in the samples that were handed to us by the Requirer, that corresponded, according to his sayings ratified in presence of a Public Notary, to the samples seen and approved by the Delegate of Firm ROBERT LAWRENCE INC., during his stay in Barcelona, and with are mentioned in the notes appearing in orders Stock-sheets Nos. 101, 102 and 103, where there is a note reading:

"COATS or JACQUETS TO BE AS SAMPLE INSPECTED IN SPAIN"

owing that at time of being required and to carry out the inspection, we had no more indications than those shown on aforesaid Bank credit, which as regards our intervention is textually reading so:

"INSPECTION CERTIFICATE MUST BE ISSUED BY SUPERVIGILANCIA SOCIEDAD GENERAL DE CONTROL SA BARCELONA CERTIFYING THAT THE GOODS ARE IN CONFORMITY WITH THE ORDER . ."

The checking of the goods have been carried out on basis of trials, taking at random approximately 10% of the goods ready for this shipment, having obtained the following outturn:

```
RAINCOATS : 5.500 Mens Cotton Raincoats
 Style : BARCELONA made out in cloth
 quality ROSAS
 " PALOS made out in cloth
 quality ECUADOR
 " GRANADA made out in cloth
 quality ECUADOR
 in Black and Tan Colours
BEACH JACKETS : 6,000 Mens Terry Beach Jackets
 Style : DANSE, one colorway = OLE, one
colorway =
 ESCARCHA in yellow, red, blue and
```

white colors, the whole, at the moment of the inspection, being found conforming to the conditions estipulated on the Order-Stock-sheets. Goods remained packed and ready for shipment as Follows:

Cases marks : CAVENDISH CO./NEW YORK

Raincoats : 60 cases Nos. 81/104 122/126 140/170.

- - - - - - - - - - - - - - - - - - - - - - - - - -

BEACH JACKETS : 122 cases Nos. 1/80 105/121
127/139 171/182"

---

There follows a lengthy recital of the details of a dispute which had apparently arisen between Lawrence and the Spanish manufacturer over the inspection of the goods, as to the merits of which Supervigilancia disclaims any responsibility. It contains the statement:

"Requirer having loaded the merchandise and being already in his possession the bills of lading together with the further documents necessary to be delivered to the Bank, holder of the aforesaid Bank-credit, he is formally requiring us for delivering this certificate what we are doing today under reserves, not as far as the goods are concerned, which correspond to the samples seen and produced referred to at the beginning of this certificate, but to the existing differents between both interested parties as per the quoted cables."

The subsequent addendum to the certificate in substance says that this latter part of the certificate is not to be taken into consideration.

 It is the duty of a bank issuing a letter of credit to pay a draft drawn upon it if, and only if, the supporting documents conform to the requirements of the letter of credit. It will be liable to its customer if it makes payment in other circumstances. The bank is not concerned with the underlying contracts or with whether they have been complied with. It deals only in documents and its duty of payment depends solely on their conformity with the letter of credit. It has a duty to examine the documents with care so as to ascertain that on their

face they comply with the terms of the credit. These terms must be strictly complied with. Where the language of a document is ambiguous on its face the bank has no duty to determine the real meaning intended. Where a certificate does not use the language required by the letter of credit the bank need not decide whether the language used was meant to say what the letter of credit demanded. Uniform Commercial Code, Mass.G.L. Ch. 106 §§ 5–109 and 5–114;[1] Moss v. Old Colony Trust Co., 246 Mass. 139, 140 N. E. 803; Crocker First National Bank of San Francisco v. De Sousa, 9 Cir., 27 F. 2d 462; Banco Nacional Ultramarino v. First National Bank, 1 Cir., 289 F. 169, 175; Bank of Italy v. Merchants National Bank, 236 N.Y. 106, 140 N.E. 211; J. H. Rayner & Co. v. Hambro's Bank, Ltd. [1943] 1 K.B. 37.

The letters of credit here required an inspection certificate unconditionally certifying "that the goods are in conformity with the order." The certificate in each case fails to meet this requirement. The certificate does not state that the goods conform to the order but only that they are found "conforming to the conditions stipulated on the Order-Stock sheets." This first of all raises a doubt as to whether an "order-stock sheet" may not be a different document from the order. There is no plain statement of conformity to the order as such but only of conformity to "conditions". This leaves it unclear whether the conformity is to the order as a whole or only to certain terms of it. Since the certificate refers specifically to one notation on the order-stock sheets as to conformity to a sample, the certificate is certainly open to the reasonable interpretation that it is intended to assert only that the goods conformed to the sample with which they were compared. That interpretation is supported by the statement in the latter part of the certificate stating that the certificate is given "under reserves, not so far as the goods are concerned, which correspond to the samples seen and produced referred to at the beginning of this certificate * * *" As to the samples used, the certificate carefully restricts itself to a statement that the samples used were those handed to them by a representative of the manufacturer and said by him to be the proper samples.

The certificate whether in its complete original form, or with part of it stricken in accordance with the addendum, is a document carefully drawn to avoid stating unequivocally "that the goods are in conformity with the order." This is not a situation where through inadvertence or through unfamiliarity with the English language words were used which varied from those required by the letter of credit. The certificate quotes verbatim from the letter of credit the statement of what it was supposed to certify and then deliberately certifies to something different. Clearly this was not the unqualified certificate required by the letter of credit and defendant bank was justified in its refusal to accept it.

Plaintiff argues that defendant should be held liable because in refusing to pay the draft it acted at the request of Lawrence and not in accordance with its own judgment. The court finds on the evidence that the officers of defendant bank arrived at their own independent decision as to the propriety of the inspection certificates. But in any case it was not reprehensible for the bank to consult with its customer. A bank faced with a doubt whether documents submitted meet the requirements of a letter of credit must arrive at a quick decision. If it decides wrongly it may be liable in one case to the presenting bank, in the other to its own customer. Its difficulty may be solved if its customer is willing to waive any defects in the docu-

---

1. Both parties appear to agree that the case is governed by the Uniform Commercial Code as enacted by Massachusetts. Plaintiff also relies upon the Uniform Customs and Practice for Documentary Credits issued by the International Chamber of Commerce, particularly Article 8 thereof. This, however, in substance states only what is contained in the Uniform Commercial Code.

ments and take and pay for the goods. There is nothing wrong in determining whether or not this is the case. Nor was there anything wrong in the bank's accepting an agreement of indemnification from its customer. This may add to the defendant's security but it does not change the essential position of the parties. If defendant were to lose in this action it would normally look to Lawrence for reimbursement. All that the bank has done is to secure its customer's agreement to accept that possible liability.

Judgment will be entered in each action for defendant dismissing the complaint.