**BANCO ESPANOL de CREDITO, Plaintiff, Appellee,**

v.

**STATE STREET BANK AND TRUST COMPANY, Defendant, Appellant.**

**No. 7249.**

United States Court of Appeals
First Circuit.

Heard March 4, 1969.
Decided April 16, 1969.

Mark A. Michelson, Boston, with whom Choate, Hall & Stewart, Boston, was on brief, for appellant.

Harold M. Willcox, Boston, with whom Charles C. Cabot, Robert E. Sullivan and Herrick, Smith, Donald, Farley & Ketchum, Boston, were on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

This is the second round in the efforts of Banco Espanol to collect on two letters of credit issued by State Street Bank and Trust Company. In the first,[1] we reversed the district court which had held that the required inspection certificates did not conform to the terms of the letters of credit. We remanded so that State Street's other defenses, not previously passed upon, could be considered. The district court rejected these defenses, granting Banco Espanol's motion for judgment and denying State Street's. We affirm.

The transactions giving rise to the letters of credit were purchases of clothing by a Boston merchant (Lawrence) from two Spanish manufacturers (Alcides and Longeur). The letters pledged State Street's credit to the manufacturers on presentation to a correspondent bank (Banco Espanol) of, among other documents, an inspection certificate, attesting that the goods conformed with the orders. The orders, in turn, carried the requirement that the goods "be as sample inspected in Spain".

What gave rise to the earlier appeal and to this one was surely one of the most discursive inspection certificates extant, drafted in the English language by those to whom Spanish is the mother tongue. In the earlier appeal we had to deal with what we might term the action part of the document—the interpretation of several phrases and clauses: "order-Stocksheets", "corresponded [according to the manufacturers] * * * to the samples seen and approved by [Lawrence]", "conforming to the conditions estipulated [sic]", and "under reserves, not as far as the goods are concerned". We held that, despite semantic difficulties, the certificates conformed in all significant respects to the requirements of the letters of credit. In this appeal we deal with the effect of a subsequent and lengthy section of the certificate, reproducing cables from Lawrence to the inspecting agency which sought to halt the inspection process.[2]

■ This reproduction of messages in the inspection certificate takes on significance in the light of State Street's allegation that there was fraud in the basic transaction, the finding of the district court that the manufacturers falsely represented to the inspection agency that certain samples had been approved by Lawrence, and the court's conclusion that "The underlying transaction was [therefore] infected with fraud." This finding, not directly challenged, brings into operation Section 5–114(2) of the Uniform Commercial Code, Mass.Gen.Laws

---

1. Banco Espanol de Credito v. State Street Bank and Trust Co., 385 F.2d 230 (1st Cir. 1967), *cert. denied,* 390 U.S. 1013, 88 S.Ct. 1263, 20 L.Ed.2d 163 (1968). Since the factual background was fully presented in that opinion, we shall try to be suitably sparse in this.

2. The certificate reported that "We [the inspecting agency] have to point out that *once our intervention had started*" the following radiograms—hereby paraphrased—were received from Lawrence.

March 13—Stop inspection until further instructions received.

March 14—Insist postponement of inspection until you inspect samples we are air mailing.

March 14—Postpone inspection till next sailing so "our approved samples per order" can be inspected.

March 15—We have rejected manufacturers' samples; take three sets of sample; send two to your New York office for our attention, examination, and further instructions.

March 18—Manufacturers' sample is not in accordance with contract; insist you use samples approved by us as order requires; ship them to us; otherwise, you approve at your peril.

On March 23 the inspecting agency cabled, in effect, that it was going ahead "according your own indications on credits and orders".

March 26 (Lawrence to agency)—We object to your going ahead since orders require samples approved by us; hold up certificate until goods are inspected by your New York correspondent.

Ch. 106, § 5–114(2) (a).[3] Banco Espanol, therefore, has the burden of demonstrating that it is a holder in due course. This means that it must carry its burden of showing that it had no notice of the underlying fraud and that it paid value. Mass.Gen.Laws Ch. 106, § 3–302(1).

State Street contends that the hyper-conscientious repetition of the cables from Lawrence on the face of the inspection certificate was "as specific and clear a notice of the defense of fraud in the underlying transaction as could be desired." It bases its argument on the following syllogism: The orders required conformity of goods with samples approved by the buyer; the cabled messages clearly asserted that the buyer had not approved the samples; hence the action of the Spanish manufacturers in seeking inspection of their goods without approved samples as standards was fraudulent. State Street's burden at this juncture is to demonstrate that the cabled messages constituted, as a matter of law, notice of fraud. Or, to put it another way, that the only reasonable interpretation of these messages is that the manufacturers had falsely represented that the samples given the inspecting agency had been approved by the buyer.

In the first place, State Street neglects to consider the precise words in the orders, which were the referents in the letters of credit: "to be as sample inspected in Spain". If the inspecting agency were to have obeyed any one of the cables it received from Lawrence, see n. 2, it could not possibly have certified that it had checked the goods against a sample "inspected in Spain". All the messages called for samples which would have been approved by the buyer in the United States.

Apart from this difficulty, the inspecting agency was justified in concluding that the buyer had once approved the samples it was using as a standard and was now trying to introduce others. The wording on the orders spoke, arguably at least, in the past tense—"as inspected in Spain". Were a future process to be contemplated, something like "to be inspected" would have been more appropriate. Moreover, to interpret the phrase as calling for the approval of the samples after the production run had been completed is to assume, first, that the buyer was content to wait until a time close to the shipping date before seeing samples and, second, that the manufacturer would mount and complete a substantial operation, leaving it to the buyer's sole decision at a very late date whether the product measured up to the samples.

The inspection agency was interpreting orders dated four months earlier, November 13, 1962, specifying types of garment, colors, and sizes "to be as sample inspected in Spain". Long negotiations directed to amending the letters of credit by requiring an inspection certificate from an independent agency were completed only on March 12, 1963, following a trip to Spain by Lawrence's representative. The shipping date called for by the letters was March 31. Both the inspection agency and Banco Espanol were entitled to assume that samples had been inspected in Spain by the buyer and that the last minute efforts to hold up inspection reflected second thoughts by the buyer.[4] We cannot say that the finding

3. "(2) Unless otherwise agreed when documents appear on their face to comply with the terms of a credit but a required document * * * is forged or fraudulent or there is fraud in the transaction.

"(a) the issuer must honor the draft or demand for payment if honor is demanded by a negotiating bank or other holder of the draft or demand which has taken the draft or demand under the credit and under circumstances which would make it a holder in due course (section 3—302)

and in an appropriate case would make it a person to whom a document of title has been duly negotiated (section 7–502) * * *."

4. This interpretation is clearly expressed in a letter written to State Street by Banco Espanol on April 8:

"From the original orders and Supervigilancia's certificate, it appears that samples 'TO BE AS SAMPLE INSPECTED IN SPAIN' * * *. There-

of the district court that Banco Espanol was not put on notice of any fraudulent conduct was clearly erroneous.

 State Street also argues that the district court erred in holding that Banco Espanol gave value in crediting the amounts specified in the letters of credit against debts owed it by the two manufacturers. State Street contends that the crediting of an account is merely an executory promise to give value, can be rescinded when a holder learns of a defense against the instrument, and is therefore not "value" under Mass.Gen. Laws Ch. 106, § 3–303 and Comment 3 thereunder.

The district court, however, was justified in observing, "From the testimony at the trial it is clear that a conditional credit subject to later revocation would have been designated 'under reserves', that the credit here was absolute and made without reserves * * *."

Even if the credit were revocable, Section 4–209 of the Code specifically provides that "[f]or purposes of determining its status as a holder in due course, the bank has given value to the extent that it has a security interest in an item provided that the bank otherwise complies with the requirements of section 3—302 * * *." Mass.Gen.Laws Ch. 106, § 4–209 (1958); *see also* § 3–303 (b). Banco Espanol's crediting the accounts of the Spanish manufacturers established such security interests, Mass. Gen.Laws Ch. 106, § 4–208(1) (1958); thus Banco Espanol did give "value" under the Code. Mass.Gen.Laws Ch. 106, §§ 4–208 (Comment 1), 4–209; Waltham Citizens Nat'l Bank v. Flett, 1968 Mass. Adv.Sh. 319, 234 N.E.2d 739 (1968).

 State Street has one other arrow in its quiver. It urges that, even if Banco Espanol took the documents as a holder in due course, the transaction was not such as "in an appropriate case would

make it a person to whom a document of title has been duly negotiated * * *." Mass.Gen.Laws Ch. 106, § 5–114(2) (a). But, as Banco Espanol cogently points out, the letters of credit required the bills of lading to be made "to the order of" State Street and they were so made.

Affirmed.

---

fore, it is not permissible in any way that the samples having been inspected here *before* the opening of the credit, the buyers wish *furtherly* introduce other samples and opportunities of approval of same. No ACTUAL sample may exist should the sellers desire to go on as the business was contracted and an irrevocable Credit covers the transaction." (Emphasis in original.)