**CORPORACION de MERCADEO AGRICOLA, Plaintiff,**

v.

**MELLON BANK INTERNATIONAL, Defendant.**

No. 74 Civ. 5203(PNL).

United States District Court, S. D. New York.

Dec. 5, 1978.

---

Herman E. Cooper, P. C., New York City, for plaintiff.

Curtis, Mallet-Prevost, Colt & Mosle, New York City, for defendant.

## MEMORANDUM OPINION

LEVAL, District Judge.

Corporacion de Mercadeo Agricola ("CMA") the plaintiff brings this action against Mellon Bank International ("Mellon") alleging that Mellon unjustifiably refused to honor plaintiff's draft drawn under Mellon's Letter of Credit 5171. Mellon moves for summary judgment on the grounds that the documentation tendered by plaintiff did not conform to the specifications of the letter of credit. Mellon's motion is granted.[1]

The controversy arises out of dealings between plaintiff CMA and Pan American Fruit and Produce Corporation ("Pan American"). CMA is an autonomous institute of the Venezuelan government which engages in the business of selling Venezuelan agricultural commodities. Pan American is a New York corporation engaged in international trade.

In March, 1974 CMA and Pan American entered into Contract No. 084 which provided that CMA would sell and Pan American would buy approximately 30,000 metric tons of Venezuelan paddy rice at a price of $9,630,000.

During the course of the negotiations leading to the contract, Pan American had

---

1. Mellon made an earlier motion for summary judgment on July 8, 1976, which was denied on May 6, 1977 by the Judge previously assigned, who found on the basis of the record as it stood the existence of certain factual issues. Since then further discovery was conducted and a new motion made for summary judgment, which is here granted.

issued a letter of authorization addressed to CMA which (translated from Spanish into English) read as follows:

February 13, 1974

Gentlemen:

We are pleased to inform you hereby that we have conferred a power of attorney to Mr. Gonzalo Sanchez Valera, Identity Card (Venezuelan) No. 163958, by which he is entitled to sign contracts and represent us and our company before the official and private organizations of the Republic of Venezuela.

Very truly yours,
Pan American Fruit
& Produce Corp.

Pursuant to this authorization, Valera had signed the purchase contract on behalf of Pan American.[2]

Contract No. 084 required Pan American to furnish certain letters of credit. In satisfaction of one such obligation, Pan American caused the issuance by Mellon on March 18, 1974, of Letter of Credit 5171 which is the subject of this action.

The credit originally carried an expiry date of April 30, 1974, but was subsequently amended to extend its validity through June 30, 1974.

Under Credit 5171, Mellon undertook to pay to CMA $963,000 upon presentation of CMA's sight draft accompanied by specified documents, which included CMA's signed statement that Pan American did not perform in accordance with Contract 084 and a "Statement of facts by . . . accountee [Pan American]".

This documentary credit calling for statements made by both buyer and seller acknowledging the buyer's default amounted to a bank guarantee to the seller of the availability of funds constituting liquidated damages in the event the buyer acknowledged default. It protected the seller against the buyer's insolvency, but not against a contract dispute with the buyer since the credit could not be drawn without the buyer's cooperation in giving a statement. Cf. Fair Pavilions, Inc. v. First National City Bank, 19 N.Y.2d 512, 281 N.Y. S.2d 23, 227 N.E.2d 839 (1967).

On June 5, 1974, CMA presented to Mellon a draft drawn under L/C 5171 demanding payment in the amount of $963,000. In purported compliance with the terms of the credit requiring a statement of facts by Pan American, CMA tendered the following documents:

(1) A document written by Valera on April 29, 1974 in which Valera recites that he is the representative of Pan American and that Pan American has not fulfilled certain obligations under Contract 084,

(2) A copy of Pan American's February 13, 1974 letter of authorization in favor of Valera, and

(3) a copy of Contract No. 084 (which bore Valera's signature for Pan American).

Valera's name and signature were previously unknown to Mellon except insofar as its files contained a copy of Contract 084 showing his signature. It is undisputed that Pan American had never lodged with Mellon any power of attorney or signature authorization in Valera's favor. Finding that the submitted document did not appear on its face to be a statement of Mellon's client Pan American, Mellon contacted Pan American to inquire whether or not Valera was its agent. It received a negative reply.

On June 11, 1974, Mellon advised CMA that it would not honor the draft for the reason that

---

2. Shortly following Valera's execution of the contract, Pan American issued a letter addressed to CMA referring to the earlier letter of authorization and advising that Valera's power was now revoked. This letter of revocation of Valera's authority was found in CMA's files, showing CMA's received stamp. Its effect is however disputed. CMA contends that the revocation letter was sent to the wrong bureau of the agency with the result that the letter did not effectively communicate its contents to the appropriate persons at CMA. Indeed CMA claims that the revocation letter was designed by Pan American to defraud CMA. In any event, the revocation letter is mentioned only as background. It plays no role whatever in this decision.

"Valera is not authorized to sign on behalf of the accountee Pan American . . . .. Consequently, the requirement for a statement of facts by the accountee has not been fulfilled." [3]

Mellon's role in this transaction was its issuance, as a financial institution, of a letter of credit on terms dictated by Pan American, the purchaser of the credit. Its sole obligation was to pay upon presentation of the documents specified in the credit. If the documents did not conform, Mellon was without obligation or responsibility.

It is black letter law that the terms and conditions of a letter of credit must be strictly adhered to. *Bounty Trading Corp. v. S. E. K. Sportswear*, 48 A.D.2d 811, 370 N.Y.S.2d 4 (1st Dep't.1975). There is no discretion in the bank to waive any of these requirements. The terms of the letter constitute an agreement between the purchaser and the bank. *Key Appliance v. First National City Bank*, 46 A.D.2d 622, 359 N.Y.S.2d 886 (1st Dep't.1974), *aff'd*, 37 N.Y.2d 826, 377 N.Y.S.2d 482, 339 N.E.2d 888 (1975). "Since the bank is interested only in the documents to be presented, the essential requirements of a letter of credit must be strictly complied with by the party entitled to draw against the letter of credit, which means that the papers, documents and shipping descriptions must be as stated in the letter." *Venizelos, S. A. v. Chase Manhattan Bank*, 425 F.2d 461 (2 Cir. 1970); *Marine Midland Grace Trust Co. of N. Y. v. Banco del Pais, S.A.*, 261 F.Supp. 884 (S.D. N.Y.1966); *Fair Pavilions, Inc. v. First National City Bank, supra*. If the bank makes payments on documents that do not conform with the underlying letter of credit, "it will be liable to its customer." *Banco Espanol de Credito v. State Street Bank & Trust Co.*, 266 F.Supp. 106, 109 (D.Mass.

1967), *reversed on other grounds*, 385 F.2d 230 (1 Cir.) *cert. den.*, 390 U.S. 1013, 88 S.Ct. 1263, 20 L.Ed.2d 163 (1968), *appeal after remand*, 409 F.2d 711 (1 Cir. 1969).

The Uniform Customs and Practice for Documentary Credits (International Chamber of Commerce), which the parties agree are applicable to the transaction, make clear that a bank issuing a credit may rely on the satisfactory appearance of presented documents without obligation to go behind to determine the true facts. *See e. g.*, Articles 8, 9, 14, 15, 22, 31. Article 8 furthermore provides that if documents "appear on their face not to be in accordance with the terms and conditions of the credit, [the issuing] bank must determine, *on the basis of the documents alone*, whether to claim that payment . . . was not effected in accordance with the terms . . . .." (emphasis supplied) Strictly construed, the letter thus obliged Mellon to pay if CMA's draft was accompanied by a document which demonstrated on its face that it was the 'statement of accountee', Pan American. Article 7 of the UCP [4] *requires* banks to examine all documents with reasonable care to ascertain that they appear on their face to accord with the terms and conditions of the credit.

The documents submitted by CMA did not demonstrate on their face that they conformed to the terms and conditions of the letter of credit. The document submitted on June 5, 1974 as the "statement of accountee" was the document signed by Valera on April 29, 1974. The proposition that Valera's statement should be deemed that of Pan American rested on the letter of authorization which was dated February 13, 1974 and was addressed to CMA (not to Mellon). [5]

---

3. Mellon also made reference to Pan American's advice that Valera's authority had been revoked. As stated previously, however, this opinion in no way depends upon that purported revocation.

4. like § 5–109(2) of the U.C.C.

5. I note that under accepted principles of agency law (which may supply only analogous authority in this letter of credit field) apparent authority sufficient to permit a third party to bind a principal is created when "either the principal . . . intend[s] to cause the third person to believe that the agent is authorized to act for him or [when] he should realize that his conduct is likely to create such belief." Restatement (Second) of Agency, § 27, comment a (1957). This communication, addressed to CMA may not have sufficed under agency law to bind the principal.

The letter was therefore outdated by several months, and was not shown by any document submitted to be still in effect when Valera made his statement two and a half months later (much less upon presentation four months later).

■ The fact that Valera had previously held a power did not require the bank to conclude that the power remained in effect. Nor was there any reason for the bank to make the assumption that the stale power was still in effect. A power which is neither stated to be irrevocable nor coupled with an interest is revocable at will. *Wilson Sullivan Co. v. International Paper Makers Realty Corp.*, 307 N.Y. 20, 119 N.E.2d 573 (1954).

The terms of the letter of credit designed by Mellon's customer Pan American forbade Mellon from paying without a statement of Pan American. If Pan American wished to make such statement through a representative, it was incumbent on Pan American to furnish Mellon with timely evidence of his authority; this could be done without inconvenience, *inter alia*, through a fresh power, a fresh confirmation of the validity of previously granted power, or by initially having granted a power irrevocable for a sufficient period. The absence of any such documentary demonstration of Valera's continuing authority permitted the bank to conclude that Valera was not shown to be the agent of Pan American and that the terms of the credit had not been satisfied.

■ Although the foregoing was sufficient basis for Mellon to dishonor the draft, there was further justification Valera's authorization was for limited purposes, which did not include signing the "statement of accountee" in question. The authorization letter stated that Valera's power permits him "to sign contracts and to represent [Pan American] before the official and private organizations of . . . Venezuela". The letter said nothing from which Mellon could infer that Valera possessed authority to make on behalf of Pan American a statement to its banker amounting to a confession of liability authorizing payment of an indemnity of nearly a million dollars.[6]

Plaintiff advances a variety of arguments in opposition to the entry of summary judgment which I find inapposite and unavailing. Some of these are discussed below.

First plaintiff claims that Valera's authority was not effectively revoked by Pan American because the purported letter of revocation was not sent to the attention of the appropriate personnel in plaintiff's offices. (See footnote 2.) My determination that CMA failed to comply with the documentary requirements of the letter of credit does not depend in any part on Pan American's *revocation* of Valera's authority. It depends rather on the fact that no power was presented to Mellon *establishing* Valera's authority to act for Pan American with respect to the "statement" submitted. My conclusions would be the same whether or not Pan American had issued the purported revocation letter.

**6.** See generally *Porges v. U. S. Mortgage & Trust Co.*, 203 N.Y. 181, 189, 96 N.E. 424 (1911). A third party must exercise care in reliance upon apparent authority. *Ford v. Unity Hospital*, 32 N.Y.2d 464, 346 N.Y.S.2d 238, 244, 299 N.E.2d 659, 665 (1973) ("One who deals with an agent does so at his peril, and must make the necessary effort to discover the actual scope of authority"), citing *Sponge Rubber Prods. Co. v. Purofied Down Products Corp.*, 281 App.Div. 380, 119 N.Y.S.2d 783 (1953), aff'd, 306 N.Y. 776, 118 N.E.2d 479 (1954). The specific authorization of particular acts tends to show that a more general authorization is not intended. *Erie County Savings Bank v. Grove*, 13 N.Y.S.2d 224 (Sup.Ct.1939), citing the Restatement; Restatement (Second) of Agency § 37 (1957). An "agent's powers are limited to the particular purpose for which the agency is, or appears to be, created." *Koreska v. United Cargo Corp.*, 23 A.D.2d 37, 258 N.Y. S.2d 432, 436 (1965), citing *Northern Assurance Co., Ltd. v. B. A. W. Trucking Co.*, 252 App. Div. 323, 324, 299 N.Y.S. 308, 310 (1937). Implied authority is limited to such acts as are reasonably necessary to effectuate the objects of the agency. *See Porges v. U. S. Mortgage & Trust Co., supra*. A third party with notice of a limitation of an agent's authority cannot rely upon the agent's authority if he should know the agent is acting improperly. Restatement (Second) of Agency § 166 (1957).

CMA argues that when it called Pan American to inquire as to Valera's authority Mellon violated its responsibilities under Article 8 of the Uniform Customs and Practice "to determine, on the basis of the documents alone . . . ." If the documents presented by CMA had included an apparently valid current power in Valera's favor, the method by which Mellon was notified of Valera's lack of authority might have been relevant.[7] But in view of the insufficiency of the presented documents, this issue is irrelevant. Where Mellon was justified in rejecting the draft on the basis of the documents alone, it did not become less justified by reason of the telephone call to its client which confirmed the apparent insufficiency of the documents.

CMA argues that in conventional letter of credit financing of international trade, banks normally accept a variety of documents as genuine although not accompanied by evidence of the maker's authority. This practice is recognized in Articles 15, 22 and 31, for example, of the Uniform Customs and Practice, *supra*. The practice described, however, relates to the conventional commercial instruments of international trade and transportation—bills of lading, postal receipts, waybills, warehouse receipts, delivery orders, invoices, certificates and stamps pertaining to the payment of freight. *See* Articles 15, 22 and 31. Such instruments have been created, negotiated, stamped and endorsed for commercial purposes independent of the draft under letter of credit. There is a logical basis for according them presumptive validity. Such documents furthermore are normally not those of the bank's customer making it impractical for the bank to obtain or insist on evidence of authority. A practice which

required authentication of every such document or endorsement would render trade hopelessly cumbersome. The practice sanctioned by the Articles in question has no applicability to the "statement" required by this letter of credit—being a unique document arising out of a unique contractual relationship whereby the bank's customer was to furnish to the bank a statement amounting to a confession of liability for breach of contract and an authorization of payment of indemnity. It is unthinkable that a bank could be required to pay on the basis of such a document without evidence of the authority of the maker.

CMA further argues that Mellon should be barred from dishonoring the draft because (as CMA claims) Mellon failed to exact adequate security from its customer Pan American. As the argument goes, Mellon's failure to obtain security for its commitment gives it a motive to dishonor which it would not otherwise have had. That a bank's action in dishonoring a draft for non-conforming documentation is or may have been motivated by a desire to protect against its own imprudence in failing to obtain adequate security from its customer does not bar the bank from insisting on conforming documents. See *AMF Head Sports Wear, Inc., v. Ray Scott's All-American Sports Clubs*, 448 F.Supp. 222 (D.Ariz. 1978). When the documentation presented is inadequate, the question of security is equally irrelevant. Furthermore, if the bank paid on non-conforming documents, its possession of security would not protect it from liability to its customer.

Finally CMA argues that Mellon should be held liable because otherwise Pan American's refusal to furnish the statement called for by the letter of credit results in CMA's

---

**7.** It should be noted that New York law permits a bank whose letter of credit incorporates the UCP to dishonor a draft upon notice of forged or fraudulent documentation. The New York Court of Appeals has determined that the UCP is not inconsistent with prior New York law, now codified in U.C.C. § 5–114(2)(b), permitting a bank to dishonor on such notice. *United Bank Ltd. v. Cambridge Sporting Goods*, 41

N.Y.2d 254, 392 N.Y.S.2d 265, 269, n. 5, 270–71, 360 N.E.2d 943 (1976). Analysis of the undisputed facts under this aspect of letter of credit law appears to favor Mellon Bank. However, my decision on Mellon's motion for summary judgment does not rest on this basis; it rests simply on CMA's failure to provide conforming documentation.

loss of the benefits of its contract for a bank guarantee. In sum CMA is arguing that liability should be imposed on Mellon lest CMA have to bear the consequences of its own imprudent contract. The argument is completely without validity. If CMA had wished to, it could have insisted on more complete security for the performance of Pan American's contractual obligations. Instead, it settled for a letter of credit which was not payable except upon presentation of a statement of Pan American. No such statement having been presented, there is no reason in the world why Mellon should make payment.

Recognizing the oft repeated admonitions of the Court of Appeals that the remedy of summary judgment is rarely to be granted, see *Flli Moretti Cereali v. Continental Grain Co.*, 563 F.2d 563, 565 (2 Cir. 1977), I conclude that this is one of those rare instances where the "policy favoring efficient resolution of disputes" *SEC v. Research Automation Corp.*, 585 F.2d 31 (2 Cir. 1978) makes summary judgment appropriate. I can see no triable issue of fact whose resolution could overcome plaintiff's failure to submit the required documents. I find that Mellon is entitled to judgment as a matter of law. Summary judgment is granted in favor of defendant Mellon.

SO ORDERED.

**Choucri ABOUCHALACHE, Plaintiff,**

v.

**HILTON INTERNATIONAL CO., Conrad N. Hilton, Charles C. Tillinghast, Jr., Curt R. Strand, Sidney H. Willner, Charles A. Bell, C. Edwin Meyer, Jr., L. Edwin Smart, and Forwood C. Wiser, Jr., Defendants.**

**Joseph L. COLLINS and Joseph J. Cappucci, Plaintiffs,**

v.

**HILTON INTERNATIONAL CO., Conrad N. Hilton, Charles C. Tillinghast, Jr., Curt R. Strand, Sidney H. Willner, Charles A. Bell, C. Edwin Meyer, Jr., L. Edwin Smart, and Forwood C. Wiser, Jr., Defendants.**

**June Rose LLOYD, as Executrix under the Last Will and Testament of Robert Anthony Lloyd, Deceased, Plaintiff,**

v.

**HILTON INTERNATIONAL CO., Conrad N. Hilton, Charles C. Tillinghast, Jr., Curt R. Strand, Sidney H. Willner, Charles A. Bell, C. Edwin Meyer, Jr., L. Edwin Smart, and Forwood C. Wiser, Jr., Defendants.**

**Jacob E. LOOHUIS, as Administrator of the Estate of Gesiena Geertruide Loohuis, Deceased, Plaintiff,**

v.

**HILTON INTERNATIONAL CO., Conrad N. Hilton, Charles C. Tillinghast, Jr., Curt R. Strand, Sidney H. Willner, Charles A. Bell, C. Edwin Meyer, Jr., L. Edwin Smart, and Forwood C. Wiser, Jr., Defendants.**

**Sophia KIUKKOHEN, Plaintiff,**

v.

**HILTON INTERNATIONAL CO., Conrad N. Hilton, Charles C. Tillinghast, Jr., Curt R. Strand, Sidney H. Willner, Charles A. Bell, C. Edwin Meyer, Jr., L. Edwin Smart, and Forwood C. Wiser, Jr., Defendants.**

**Nazih LADKI, Plaintiff,**

v.

**HILTON INTERNATIONAL CO., Curt R. Strand, Sidney H. Willner, and Charles A. Bell, Defendants.**